THE PEOPLE *ex rel.* Joseph Phillips, Relator, *vs.* CHRIS-
TOPHER STRASSHEIM, Sheriff, Respondent.

*Opinion filed June 16, 1909.*

1. ELECTIONS—*a primary election law must maintain constitu-
tional rights of voters.* A primary election is within the meaning
of section 1 of article 7 of the constitution, prescribing the quali-
fications of voters, and to be valid a primary election law must
sustain such qualifications, and not curtail, subvert or add to them.

2. SAME—*section 44 of Primary Election act of 1908 is invalid.*
Section 44 of the Primary Election act of 1908 is unconstitutional,
in that in cities where the City Elections act is in force voters
not on the last registration list are denied the right to vote at the
primary election without having an opportunity to register, even
though they may have acquired the requisite qualifications, since
the last registration day, to entitle them to be registered.

3. SAME—*proviso to section 44 of Primary act of 1908 does not
cure the invalidity of such section.* The proviso to section 44 of
the Primary Election act of 1908, which makes provision for non-
registered voters making an affidavit as to residence in the elec-
tion district, etc., applies only to persons who have moved into the
election district since the last registration, and affords no relief to
voters becoming of age, becoming naturalized or otherwise becom-
ing entitled to vote since the last registration, and hence does not
cure the invalidity of such section. (*People* v. *Hoffman,* 116 Ill.
587, explained.)

4. SAME—*when law which fails to give opportunity to register
is invalid.* A person possessing the other constitutional qualifica-
tions is only required to reside in the election district thirty days
next preceding the election to entitle him to vote at the election,
and if registration is a condition precedent to the right to vote,
the law must afford him an opportunity to register within the
period of thirty days before the election; and any law which, in
effect, fails to afford such opportunity or which requires a longer
residence than thirty days, adds to the constitutional qualifications
of voters and is invalid.

5. SAME—*when an act affects unequally parties possessing the
same qualifications.* An act conferring the right to vote upon a
man who has moved into an election district after the last regis-
tration day and withholding such right from others who possess
all of the qualifications of legal voters but who have not moved
into another district, affects unequally parties possessing similar
qualifications of electors and is in violation of the constitution.

6. SAME—*section 11 of Primary Election act of 1908 is invalid.* Section 11 of the Primary Election act of 1908, by providing that each qualified primary elector may cast one vote for each of as many candidates for representatives in the General Assembly as are to be nominated by his party, as determined by the senatorial committee, denies to such elector his constitutional right to vote for three candidates for representatives or to cumulate his vote upon or divide it between a less number, and is invalid. (*Rouse* v. *Thompson,* 228 Ill. 522, explained.)

7. SAME—*election of managing committee is within the title of the Primary Election act of 1908.* The provision of the Primary Election act of 1908 for the election of managing committees of the political parties is properly a part of the general subject of the act and is within the title, which is sufficiently comprehensive to meet the requirements of the statute.

8. CONSTITUTIONAL LAW—*invalidity of sections 11 and 44 of Primary Election act of 1908 renders entire act void.* Sections 11 and 44 of the Primary Election act of 1908 are so essentially a part of the act that if eliminated the act would not be a complete law for the purpose for which it was intended, and hence the invalidity of such sections renders the entire act void. (*People* v. *Election Comrs.* 221 Ill. 9, and *Rouse* v. *Thompson,* 228 id. 522, adhered to.)

9. SAME—*holding Primary act invalid does not affect title of officers elected.* After an election has been held the title of the successful candidates to their offices is not affected by holding unconstitutional the Primary act under which they were nominated.

CARTER, J., specially concurring.

ORIGINAL petition for *habeas corpus.*

DARROW, MASTERS & WILSON, for relator:

The Primary Election act of 1908 is unconstitutional because it adds to the constitutional qualifications of electors and deprives constitutionally qualified electors of the right to vote at such primary election.

The constitution of the State of Illinois (art. 7, sec. 1,) provides: "Every person having resided in this State one year, in the county ninety days and in the election district thirty days next preceding any election therein, * * * who shall be a male citizen of the United States above the age of twenty-one years, shall be entitled to vote," etc.

A primary election is an election within the meaning of the above constitutional provision, and a law that denies to any person possessing the qualifications prescribed by the constitution the right to vote at such a primary election is unconstitutional and void. *People* v. *Election Comrs.* 221 Ill. 9; *Rouse* v. *Thompson,* 228 id. 540.

Section 44 of the Primary Election law of 1908 provides that "in all cases where registration is required as a condition precedent to voting at regular elections, only registered voters shall be entitled to vote at such primary." Then follows a proviso that any legal voter who has not registered shall be entitled to vote if he shall file an affidavit to the effect that he has removed into the precinct since the last registration of electors. The Primary act of 1908 fixes the dates when primary elections are to be held but contains no provisions in reference to registration, so that the only opportunity voters have to register is at either the general or intermediate registration above referred to.

Section 44 of the Primary act of 1908 is unconstitutional because it disfranchises constitutionally qualified electors, and for the very reasons pointed out by this court in the case of *Rouse* v. *Thompson,* 228 Ill. 522.

If the mode or method or regulations prescribed by law for such purpose and to such end deprive a fully qualified elector of his right to vote at an election without his fault and against his will, and require of him what is impracticable or impossible and make his right to vote depend upon a condition which he is unable to perform, they are destructive of his constitutional right, and make the law itself as void as if it directly and arbitrarily disfranchised him without any pretended cause or reason, or required of an elector qualifications additional to those named in the constitution. *Dells* v. *Kennedy,* 49 Wis. 555.

The Primary Election act of 1908 is unconstitutional because it deprives the voters at such primary election of their constitutional right to nominate candidates for the

General Assembly of their party to be voted for at the next election. *People* v. *Election Comrs.* 221 Ill. 9; *Rouse* v. *Thompson,* 228 id. 540.

FRANK J. LOESCH, Special State's Attorney, for respondent:

The Primary act, in so far as it fixes the qualifications of voters under the proviso of section 44, is a valid law. A registry law is merely a mode of ascertaining and determining whether or not a man possesses the necessary qualifications of a voter. *People* v. *Hoffman,* 116 Ill. 587.

The Primary act of 1906, which was declared unconstitutional in the case of *Rouse* v. *Thompson,* 228 Ill. 522, provided, without qualification, by section 33, that "in all cases where registration is required as a condition precedent to voting at a regular election, only registered voters shall be permitted to vote at such primary election." The legislature, in enacting the Primary law of 1908, to meet the views of this court, added to the last quoted language from section 33 of the act of 1906 the proviso contained in section 44, and that proviso was copied almost verbatim, as before shown, from section 27 of article 3 of the City Registration act, which act, as a whole, had been held to be constitutional in *People* v. *Hoffman,* 116 Ill. 587.

Primary election laws have passed their initial legal stage, and while many of the earlier acts in different States have been declared unconstitutional, the great weight of authority now is that State legislatures have the general power to pass reasonable primary laws. *People* v. *Election Comrs.* 221 Ill. 9; *Rouse* v. *Thompson,* 228 id. 522; *Ladd* v. *Holmes,* 66 Pac. Rep. 714; *Hopper* v. *Steck,* 56 Atl. Rep. 1; *Dapper* v. *Smith,* 138 Mich. 104; *State* v. *Jensen,* 86 Minn. 19; *State* v. *Drexel,* 105 N. W. Rep. 174; *Matter of House Bill No. 203,* 9 Colo. 631; *People* v. *Democratic Gen. Com.* 164 N. Y. 335; *Leonard* v. *Commonwealth,* 112 Pa. St. 622; *Attorney General* v. *Dishan,* 169 Mass. 534.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This is an original proceeding in this court upon a writ of *habeas corpus* issued out of this court, directed to the sheriff of Cook county, upon the petition of Joseph Phillips. The relator was indicted by a special grand jury for Cook county for alleged offenses claimed to have been committed by him, in violation of the Primary Election law, at the primary election held in the city of Chicago August 8, 1908. The relator was taken and held in custody by respondent, the sheriff of Cook county, by virtue of a *capias* issued upon said indictment. The petition charges that said indictment and *capias* are void, on the ground that the Primary Election law of 1908 is unconstitutional and void and that the detention of the relator is without authority and invalid.

It is not questioned by respondent that under previous decisions of this court the validity of the law under which the indictment was found and returned may be determined in a proceeding of this character. The sole question discussed in the briefs of respondent is the validity of the Primary Election law of 1908. It is contended by relator that the said act is unconstitutional because it deprives electors possessing the constitutional qualifications of the right to vote at the primary and because it adds to the constitutional qualifications of electors.

Section 1 of article 7 of the constitution reads as follows: "Every person having resided in this State one year, in the county ninety days, and in the election district thirty days next preceding any election therein, who was an elector in this State on the first day of April, in the year of our Lord 1848, or obtained a certificate of naturalization before any court of record in this State prior to the first day of January, in the year of our Lord 1870, or who shall be a male citizen of the United States, above the age of twenty-one years, shall be entitled to vote at such election."

Section 44 of the Primary Election law in part reads as follows: "No person shall vote at a primary unless he shall be a legally qualified voter, under the general election laws of this State, and unless he declares his party affiliation, as required by this act, and in all cases where registration is required as a condition precedent to voting at regular elections only registered voters shall be entitled to vote at such primary: *Provided, however,* that at such primary any legal voter of a precinct, who has not registered, shall be entitled to vote in case he shall file with the primary judges an affidavit, stating the time when he removed into such precinct, and the length of his legal residence in such precinct, county and State, and that he has removed into that precinct since the last registration of electors at the last election and that he is a legal voter of such precinct, supported by an affidavit of a registered voter and householder of such precinct, that he knows such voter and that his statements as to the time of his residence, as aforesaid, are correct, and that such person is a legal voter in such precinct."

The act of 1885, entitled "An act regulating the holding of elections and declaring the result thereof in cities, villages and incorporated towns in this State," which will hereafter for convenience be called the City Elections act, has been adopted by the city of Chicago and other cities in this State. In all cities where said act applies no one is entitled to vote at an election unless his name appears upon the registry as a qualified voter. Section 3 of article 3 of the said act provides for registration preceding the first general city, village or town election, or the first general State or county election, which may occur after the adoption of the act and the first appointment of a board of election commissioners. Thereafter a general registration is required to be made in every year in which a congressional election occurs. The first day of such registration is on the Saturday immediately preceding the Tuesday four

weeks before such election, and the second day of such registration is Tuesday, three weeks before the election. Section 17 of article 3 of the act provides for an intermediate registration preceding every city, village or incorporated town election that takes place between the general registrations. So much of said section 17 as is important for this discussion reads as follows: "At every election held in each city, village or incorporated town between the general registration above referred to (except in case of a special election in and for such city, village or town, or in some part of such city, village or town, and except at any judicial election held between such general registrations, at which election no other officers than judicial officers are to be voted for,) the last general registration shall be used, but the same shall be revised by the board of registry of each precinct where such election is to be held, and for that purpose the board of registry shall meet on Tuesday, three weeks preceding such election, and shall hold a session from eight o'clock A. M. to nine o'clock P. M. on that day, and names may be added to the registers in the same way, upon sworn application, as in the case of a general registration, and all the other forms and requirements are to be observed."

Section 1 of the Primary Election law of 1908 designates the offices for which candidates are required to be nominated at a primary election held under the provisions of the act. Section 6 fixes the times of holding primary elections for the nomination of candidates for the various offices. Said section 6 reads as follows: "A primary shall be held on the second Tuesday in April in every year except the year A. D. 1908, in which year a primary shall be held on the 8th day of August, A. D. 1908, in which officers are to be voted for on the first Tuesday after the first Monday in November of such year, for the nomination of candidates for such offices as are to be voted for at such November election, and shall be known as the April pri-

mary: *Provided, however,* that wherever in this act the term 'April primary' or equivalent words shall appear, such term or such words shall be construed as to the primary held in August, A. D. 1908, to refer to and govern such primary so held in August, A. D. 1908. A primary shall be held on the second Tuesday in April in any year in which judges of the Supreme Court, judges of the circuit court and judges of the superior court of Cook county, or any of them, are to be elected, at an election to be held on the first Monday in June of each year, for the nomination of candidates for such offices, respectively. A primary shall be held on the last Tuesday in February in each year for the nomination of such officers as are to be voted for on the first Tuesday in April of such year. A primary shall be held on the second Tuesday in March in each year for the nomination of such officers as are to be voted for on the third Tuesday in April of such year. A primary for the nomination for all other officers, nominations for which are required to be made under the provisions of this act, shall be held three weeks preceding the date of the general election for such offices respectively. The polls shall be open from six o'clock A. M. to five o'clock P. M."

It will be seen that the first primary held for the nomination of candidates to be voted for at the November election was required by the law to be held August 8, 1908, but all subsequent primaries for the nomination of candidates to be voted for at the November election are required to be held on the second Tuesday in April. In all cities where the City Elections act has been adopted registration is a condition precedent to the right to vote at the election, and section 44 of the Primary Election law provides that only registered voters shall be entitled to vote at the primary election "in all cases where registration is required as a condition precedent to voting at regular elections." This court has held that a law providing for the nomination of candidates for public office by a primary election is an elec-

tion law and that all primaries held under it are elections, within the meaning of the constitution, and that such a law, to be valid, must sustain the constitutional rights of voters and not curtail, subvert or injuriously restrict such rights. "The right to choose candidates for public offices, whose names will be placed on the official ballot, is as valuable as the right to vote for them after they are chosen, and it is of precisely the same nature." *People v. Board of Election Comrs.* 221 Ill. 9; *Rouse v. Thompson,* 228 id. 522.

The Primary Election law makes no provision for registration. The law governing that subject in cities that have adopted the City Elections act is found in that act, and it is contended that numbers of persons possessing the constitutional qualifications of electors were denied the right to vote at the primary election August 8, 1908, because no provision was made by the law to enable them to register within thirty days before the primary election. The last general registration before said primary election was on October 16, 1906, and the last intermediate registration was in March, 1908, more than four months prior to the primary election. Persons not possessing the constitutional qualifications of voters at the April election next succeeding the March registration could not be registered as qualified voters. No other opportunity was afforded such persons by law to register as qualified voters until the general registration in October, which was after the primary election. It is very evident that many persons not possessing the qualifications necessary to entitle them to vote at the April election, and who were therefore not entitled to be registered as qualified voters at the registration preceding said April election, may have become qualified voters for the primary election in August, but not being registered they would not be entitled to vote. One of these classes of persons is, men who became twenty-one years of age between the April, 1908, election and the pri-

mary election in August following. The City Elections act provides for the registry of persons who are not twenty-one years of age on the day application is made for registration but who will be twenty-one years of age not later than the day of election immediately following. If the applicant will not be twenty-one years old on the day of election immediately following the registration he cannot be registered as a qualified voter. He may become twenty-one within a day, a week or a month after the April election and possess all the other qualifications necessary to make him a legal voter, but the law affording him no opportunity to register as such within thirty days before the primary election in August, section 44 of the Primary Election law deprives him of the right to vote at said primary election.

Another class is composed of persons who will not have resided in the election district thirty days prior to the election next succeeding the time fixed for registration. The City Elections act provides for the registration of persons who have "commenced to reside in such precinct at least thirty days before such election." If, however, he commenced to reside in the precinct twenty-nine days, or any number of days less than thirty, next preceding the election he could not be registered as a qualified voter, and such person, unless he came within the proviso to said section 44, which is hereafter discussed, although he possessed all the constitutional qualifications entitling him to vote at the primary election, could not exercise that right, because the law afforded him no opportunity to register after the April registration, at which time he was not eligible to registry. The same thing would be true of persons who had not resided in the county ninety days or in the State one year before the election in April but who would have resided in the county ninety days or in the State one year prior to the day of the primary election.

Another class of persons who would be deprived of the right to vote at the primary election is composed of men

who secure their final naturalization papers after the election next succeeding the last registration and before the primary election is held. Such persons could not be registered as qualified voters because they would not be such at the election next succeeding the registration, but having secured their naturalization papers after the election they might possess all the qualifications necessary to entitle them to vote at the primary election, but they would be denied the exercise of that right because not registered.

Another class injuriously affected by the requirement of registration as a condition precedent to the right to vote where registration is required, and the failure to make any provision for registration within thirty days before the primary election, is composed of those who possessed all the constitutional qualifications of legal voters on the day of registration provided for in the City Elections act but who for some reason failed to register.

The foregoing illustrations will serve to show that the effect of the provisions of section 44 of the Primary law referred to is to disfranchise electors possessing all the constitutional qualifications of voters, who through no fault of their own, but because the law afforded them no opportunity, were not registered as qualified voters at the primary election. A person possessing the other constitutional qualifications is only required to reside in the election district thirty days next preceding the election to entitle him to vote at said election, and if registration is a condition precedent to the right· to vote, the law must afford an opportunity to register within the period of thirty days before the election. The effect of any law which fails to do this or requires a longer residence than thirty days is to add to the constitutional qualifications of voters and is therefore invalid. (*Rouse* v. *Thompson, supra.*) Upon this subject the Supreme Court of Wisconsin said in *Dells* v. *Kennedy,* 49 Wis. 555: "If the mode or method or regulations prescribed by law for such purpose and to such

end deprive a fully qualified elector of his right to vote at
an election without his fault and against his will, and re-
quire of him what is impracticable or impossible and make
his right to vote depend upon a condition which he is un-
able to perform, they are destructive of his constitutional
right, and make the law itself as void as if it directly and
arbitrarily disfranchised him without any pretended cause
or reason or required of an elector qualifications additional
to those named in the constitution." *Attorney General* v.
·*Detroit,* 78 Mich. 545, *City of Owensboro* v. *Hickman,* 90
Ky. 629, and *VanBockelen* v. *Canaday,* 73 N. C. 179, are
to the same effect.

What we have said with reference to the primary elec-
tion held in August, 1908, is equally applicable to primary
elections required to be held on the last Tuesday in Febru-
ary and the second Tuesday in March in each year. No
registration days are provided by law to be held within
thirty days preceding primary elections required to be held
on those dates.

Section 33 of the Primary act of 1906 contained the
same requirements with reference to registration that are
contained in section 44 of the act of 1908, and for the same
reasons herein stated said section 33 was held unconstitu-
tional in *Rouse* v. *Thompson, supra.* Upon that subject
the court said in that case, on pages 541 and 542: "The
act in question, by requiring certain voters in the State
to be registered before they can participate in a primary
election of their party and then failing to furnish them an
opportunity to register within thirty days of the date of
the primary election, adds to the qualification of such voters
by requiring a residence in the election district of more
than thirty days prior to the election, which clearly is in
conflict with the constitutional provision which provides if
such voter has resided in his election district thirty days
he shall be a qualified elector. If, under the guise of a
registration law, a residence of thirty-three days, or any

greater number of days than thirty, can be required of the voter in the election district where he is entitled to vote before he can vote at a primary election, then the qualifications of the voter might be extended until every qualification of the voter fixed by the constitution is annulled and all voters but a favored few can be prevented from participating in primary elections. In *People* v. *Board of Election Comrs. supra,* it was held the vote of every qualified elector must be equal in its influence with that of every other one. If voters in one part of the State who have resided in an election district thirty days are permitted to vote at primary elections °while in other portions of the State they are not, then is the freedom and equality of elections secured to the people by their fundamental law destroyed. We are of the opinion that section 33 of said act, in so far as it prohibits otherwise qualified electors from voting at primary elections unless they are registered, when no opportunity is afforded them by law to register within thirty days of the time when primary elections are to be held, is in conflict with the constitution and void." What was there said is conclusive of the provisions of section 44 referred to, which are identical with section 33 of the act of 1906.

Section 44 of the act under consideration contains a proviso that was not in section 33 of the act of 1906. The proviso is as follows: *"Provided, however,* that at such primary, any legal voter of a precinct, who has not registered, shall be entitled to vote in case he shall file with the primary judges an affidavit, stating the time when he removed into such precinct, and the length of his legal residence in such precinct, county and State, and that he has removed into that precinct since the last registration of electors at the last election and that he is a legal voter of such precinct, supported by an affidavit of a registered voter and householder of such precinct, that he knows such voter and that his statements as to the time of his resi-

dence, as aforesaid, are correct, and that such person is a legal voter in such precinct." This proviso, if valid, affords relief only to such persons as have removed from one precinct to another since the last registration. Such persons though not registered in the precinct from which they move, are permitted to vote, without registration, in the precinct into which they have moved upon filing with the judges an affidavit stating, among other requirements, that the affiant has removed into the precinct since the last registration of electors at the last election, and shall also furnish the affidavit of a registered voter and householder that he knows such voter, that his statements as to the time of his residence are correct and that such person is a legal voter in such precinct. This proviso affords no relief whatever to those who do not move to another precinct, and such voters are as injuriously affected by section 44 of the present act as they were by section 33 of the act of 1906.

The constitution requires all elections to be free and equal, and laws enacted for the government of elections, as said in *People* v. *Board of Election Comrs. supra,* must not subvert or injuriously restrict the right of suffrage or conflict with the provisions of the constitution. "The legitimate purpose of such a law, [primary election law,] however, must be to sustain and enforce the provisions of the constitution and the rights of voters, and not to curtail or subvert them or injuriously restrict such rights." Conferring the right to vote upon a man who moves into another precinct and withholding the right from others possessing all the constitutional qualifications of legal voters but who do not remove to another precinct, affects unequally parties possessing similar qualifications of electors and is in violation of the constitution.

Section 44, if given effect, would deprive qualified voters in some portions of the State of the right to vote without any fault or neglect on their part, while voters similarly situated and possessing the same qualifications, in other

parts of the State, would be allowed to vote. Registration as a condition precedent to the right to vote at a primary election is only required in cities, villages and incorporated towns which have adopted the City Elections act. In all other localities in the State, while registration is provided for by the act of 1865, a voter possessing the necessary qualifications may, by making the affidavit required, vote, even though he is not registered. In those parts of the State any qualified voter may vote at a primary election, whether registered or not. If candidates for State offices are required to be nominated at a primary election, then all qualified voters in the State have a right to vote for the candidates of their choice and the law should afford them an opportunity to do so. We have seen that the Primary Election law of 1908 does not do this, for in cities where the City Elections act applies many persons possessing the necessary qualifications of legal voters may be denied the right to vote at a primary election because the law has provided no means for their registration. If voters where registration is required as a condition precedent to the right to vote at a primary election were given an opportunity to register within thirty days previous to the primary, then if they failed or neglected to register, and thereby lost their right to vote, it would afford no just ground of complaint against the law; but where they are deprived of the right to vote because the law has not given them an opportunity to do that which it makes compulsory on them to do in order to be entitled to vote, and in other localities in the State not under the operation of such law voters similarly situated are allowed to vote, there is just ground of complaint of inequality.

The City Elections act provides that the name of every person applying for registry shall be entered in the registry books and the fact stated therein whether he is entitled to vote or not. If from the facts stated he appears not to be a qualified voter, the word "No" shall be entered in the

appropriate column opposite his name; if he is a qualified voter, the word "Yes" is to be entered in the same column. Only the names of such male persons of the age of twenty-one years and residing in the precinct as shall apply personally for registration shall be entered in the registry books; but if the applicant will be twenty-one years old on the day of the next election, if otherwise qualified, his name shall be registered, and every applicant who has commenced to reside in the precinct thirty days before the election shall be entered in the registry and marked qualified or disqualified, as the case may be. If he will not have resided in the election precinct thirty days before the election he cannot vote, though otherwise qualified. The purpose and meaning of the act is, that no one shall be registered as a qualified voter unless he will be such on the day of the next succeeding election.

At the intermediate registrations the last general registration is used, but it is required to be revised by the board of registry of each precinct, and for that purpose the board is required to meet on Tuesday, three weeks preceding the election. Counsel for respondent contends that at the time of the revision of the registry persons who had been marked disqualified at the general registration but who appear to have since become qualified may be marked as qualified voters at the next succeeding election and entitled to vote thereat. Conceding this to be true, it does not relieve the situation, for the primary elections required to be held on the last Tuesday in February and second Tuesday in March are between the day of general registration and the intermediate registration or revision of the registry list. No opportunity, therefore, is afforded a person marked disqualified on the general registration to be marked qualified before two primary elections shall have been held.

The proviso of section 44 of the Primary Election law above quoted is copied from the second clause of section 27 of article 3 of the City Elections act. The first clause of

that section provides that there shall be no revision of the registry previous to any special election occurring in a portion of such city, village or town only, or to fill a vacancy in a single office, or at judicial elections where no other than judicial officers are to be elected. Following this provision said section 27 reads as follows: "But at such special or judicial election any legal voter of a precinct shall be entitled to vote in case he shall file with the judges of election an affidavit, stating the time when he removed into such precinct and the length of his legal residence in such precinct, county and State, and that he has removed into that precinct since the last registration of electors at the last election, and that he is a legal voter of such precinct, supported by an affidavit of a registered voter and householder of the precinct that he knows such person, and that his statements as to his time of residence, as aforesaid, are correct, and that such person is a legal voter in such precinct." It will be seen by comparison with the proviso of section 44 of the Primary Election law that it is substantially identical with the language quoted from section 27.

Counsel for respondent refers to *People* v. *Hoffman*, 116 Ill. 587, as an authority in support of the constitutionality of section 27 of the City Elections act, and argues that if said section of that act is valid the proviso to section 44 of the Primary Election law must be held valid also. In the *Hoffman case* the constitutionality of the City Elections act as a whole was assailed but no question was raised as to the validity of section 27, so that that case cannot be considered as an authority in the determination of the questions here involved. We are not to be understood as expressing any opinion upon the constitutionality of section 27, for it is not involved in this case.

But counsel insists that if the proviso to section 44 of the Primary Election law is invalid it necessarily follows that secton 27 of the City Elections act is invalid, and that if it is so held it might affect the title to their offices of

persons elected in territory where that act applied. This is a misapprehension. After the election has been held the title to their offices of the successful candidates cannot be affected by a decision holding the law under which the nominations were made invalid. *Schuler* v. *Hogan,* 168 Ill. 369.

Section 11 of the Primary Election law of 1908 is also assailed as being unconstitutional. ·Said section reads as follows: "At least thirty-three (33) days prior to the date of the April primary the senatorial committee of each political party shall meet, and, by resolution, fix and determine the number of candidates to be nominated by their party at the primary for representative in the General Assembly. A copy of said resolution, duly certified by the chairman and attested by the secretary of the committee, shall, within five days thereafter, be filed in the office of the Secretary of State, and in the office of the county clerk of each county in the senatorial district. In all primaries for the nomination of candidates for representatives in the General Assembly, each qualified primary elector may cast one vote for each of as many candidates as are to be nominated by his party, as above provided. And the said candidates for nomination highest in votes shall be declared nominated."

It is contended by counsel for the relator that as a primary election is an election, within the meaning and under the protection of the constitution, all rights and privileges conferred by the constitution upon qualified voters at elections of officers must obtain at primary elections where the nomination of candidates for public offices is required by law to be made at a primary election, and that as the constitution gives a qualified voter the right to vote at the election for three candidates for representatives in the General Assembly, or to cumulate or divide his vote upon a less number of candidates, a primary election law requiring the nomination of representatives in the General Assembly to be made at a primary election, which denies to a voter the same privilege in voting for the nomination of candidates,

is an abridgment or restriction of his constitutional rights and therefore invalid.

Reflection will disclose that the nomination of candidates for representatives in the General Assembly by a direct primary election law where the minority system of representation prevails is a difficult question to control. If each political party were required to nominate three candidates it would render nugatory the constitutional provision for minority representation, for if each party nominated three candidates it would frequently, if not generally, happen that the dominant party in a senatorial district would elect three candidates and the minority party would be without representation. The only way this could be avoided would be for the minority party, after having nominated three candidates, to cumulate its votes on one of them, which would be impracticable, if not impossible. The act of 1906 permitted as many persons to become candidates for nomination for representative in the General Assembly as should comply with the requirements necessary to procure their names to be printed on the official primary ballot, but the voter at the primary election was only permitted to vote for one candidate. Under that act only one candidate could be nominated by the voters of a political party at the primary election but authority was given the senatorial convention to nominate additional candidates, and it was held that the nomination of candidates for representatives having been brought under the provisions of the act, the legislature had no power to provide for the nomination of one candidate by the voters and for the nomination of others by convention. It was said in *Rouse* v. *Thompson, supra,* that the right to nominate candidates for representatives in the General Assembly is as important to the voter as the right to vote for them after they are nominated, and is of the same character. The present act confers power upon the senatorial committee of a political party to determine how many candidates the party will nominate at the primary election

for representative in the General Assembly, and each quali-
fied voter is authorized to cast one vote for each of as many
candidates as the senatorial committee has determined may
be nominated by the political party at the primary election.

It is insisted that by the provision under consideration
the legislature followed the suggestion in the *Rouse case,*
that it might be the senatorial committees or senatorial con-
ventions for the respective districts could be empowered to
suggest to their respective political parties, by resolution or
otherwise, the number of candidates that should be nomi-
nated for the district, and have the suggestion, in some
form, placed on the official ballot for the guidance of the
voters. Section 11 of the present act, however, does not
follow the suggestions in that case, for it authorizes the
senatorial committee to determine the number of candidates
and restricts the voter at the primary election to one vote
for each of as many candidates as the senatorial commit-
tee has decided shall be nominated. It was decided in the
*Rouse case* that although it had been determined that a less
number than three candidates for representative in the Gen-
eral Assembly should be nominated by one political party,
yet if three or more candidates' names appeared on the pri-
mary ballot the voter would have a right to vote for three
candidates or cumulate his vote on one or two candidates.
If less than three names appear on the primary ballot the
voter may give his three votes to one candidate or divide
his vote between two, if two candidates' names appear on
the ballot. Section 11 denies the voter the right to vote for
three candidates if he so desires or to cumulate his vote on
a less number if he sees fit. He is restricted to one vote
for one candidate, if the senatorial committee has deter-
mined only one is to be nominated, or one vote each for
two candidates if two are to be nominated. The *Rouse
case* contains no intimation that the voter may be deprived
of his constitutional right to vote for more than one can-

didate at the primary election or to cumulate his vote. If, as contended by counsel for respondent, the legislature attempted to make section 11 conform to the suggestions in that case, it failed to do so.

It is also contended the act is invalid because its title is defective. This contention is based on the proposition that in addition to providing for the nomination of candidates by primary election the act also provides for the election of managing committees of the political parties. The title of the act is, "An act to provide for holding primary elections by political parties." The constitution requires the subject of the act to be expressed in the title, and it is contended that the title of the act in question only relates to the nomination of candidates for office, while the act itself embraces the election of managing committees of the political parties. The purpose of the constitutional requirement as to the title of legislative acts was discussed in *Milne* v. *People,* 224 Ill. 125, and cases there cited. It was there said the constitution did not require that the subject be specifically and exactly expressed in the title, but that it was sufficient if the expression in the title called attention, in general terms, to the subject of the act, and that if the title is so worded as to fairly apprise legislators and the public of the subject matter of the legislation and reasonably lead to inquiry into the body of the act, it is all that is required. In *People* v. *McBride,* 234 Ill. 146, it was said the constitutional provision was not intended to hamper or embarrass honest legislation, but to prevent incorporating in an act matters not related to the subject of the legislation and of which the title gives no hint. "An act may contain many provisions and details for the accomplishment of the legislative purpose, and if they legitimately tend to effectuate that object the act is not contrary to the constitutional provision." The election of managing party committees was intended as a part of the scheme to accomplish

the purposes of the act, and we think the title sufficiently comprehensive and that it substantially meets the requirements of the constitution.

It remains to be determined whether holding sections 11 and 44 to be unconstitutional requires the entire act to be declared unconstitutional. It does not always follow that because one or more sections of an act are invalid the whole act must be declared invalid. The rule is, that if the unconstitutional portions of an act may be disregarded and what remains of the act would be sufficient to effectuate the purposes and intentions of the legislature, then the whole act is not invalid but will be sustained independently of the unconstitutional portions. The Supreme Court of the United States said in *Connolly* v. *Union Sewer Pipe Co.* 184 U. S. 540, at page 565: "If different sections of a statute are independent of each other, that which is unconstitutional may be disregarded and valid sections may stand and be enforced; but if an obnoxious section is of such import that the other sections without it would cause results not contemplated or desired by the legislature, then the entire statute must be held inoperative." In *People* v. *Cooper*, 83 Ill. 585, this court adopted the rule as announced by Judge Cooley in his work on Constitutional Limitations, as follows: "If a statute attempts to accomplish two or more objects and is void as to one it may still be in every respect complete and valid as to the other; but if its purpose is to accomplish a single object, only, and some of its provisions are void, the whole must fall unless sufficient remains to effect the object without the aid of the invalid portion; and if they are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, condi-

tional or connected must fall with them." In later cases the same section is cited by this court with approval.

It needs no argument to show that with sections 11 and 44 eliminated from the Primary Election law it is not a complete act for the purposes for which it was intended, and the legislature would never have enacted it without those sections or if it had been known that they were invalid. The act is, in the respects above pointed out, clearly unconstitutional when tested by the law as laid down in the *Board of Election Comrs. case* and in the *Rouse case*. It could not be expected that we would regard this statute as valid unless it was also expected that we would depart from the views expressed in those cases. We perceive no reason for any such departure.

For the reason that the law creating the supposed offenses for which the relator was indicted and taken and held in custody is invalid, it is ordered that he be discharged.

*Order of discharge entered.*

Mr. JUSTICE CARTER, specially concurring:

The conclusion reached in the foregoing opinion as to the unconstitutionality of the Primary law necessarily follows from what was said in *People* v. *Board of Election Comrs.* 221 Ill. 9, and *Rouse* v. *Thompson,* 228 id. 522. This separate opinion is written because of my belief that the court should have set forth, in definite and explicit terms, its views concerning nominations, under a direct primary, of candidates for representatives in the General Assembly. The law on the question as laid down in the *Rouse case* seems to have been misunderstood by the legislature in drafting the act here under consideration. It was there stated that the senatorial committee, by resolution or otherwise, might "suggest to the voters of their respective parties the number of candidates that ought to be selected by their party at the primary election, for representative in the General Assembly, and to have such sug-

gestion placed in some form upon the official primary ballot for the guidance of the individual voter." Manifestly, from that decision the committee could only advise the voters and trust to their party loyalty to follow that advice. If three or more persons received votes for representative in the General Assembly in a given senatorial district, whether the names of such persons were printed on the primary ballot or were written in by the voters themselves, then the three persons receiving the highest number of votes must have had their names printed on the official election ballot, regardless of any resolution or suggestion of the senatorial committee advising that a less number be nominated. This, it seems to me, is the necessary conclusion to be drawn from the *Rouse case.* That might result in the nomination of three candidates for each party in many, if not all, of the senatorial districts. The only way in which minority representation can be made effective, under that decision, by a direct primary law, will be for the voters of the minority party in a given senatorial district to cumulate their ballots on election day for one or two candidates.

The opinion in this case states: "If each political party were required to nominate three candidates it would render nugatory the constitutional provision for minority representation." From this language, taken in connection with all that is said in the opinion on the question of legislative nominations, it might be fairly argued that the court here intended to overrule, in effect, the *Rouse case* on this subject. But the question is left more or less obscure. No attempt is made in this opinion to point out particularly just how any direct primary law can be made effective as to nominations for representatives in the General Assembly. My own views touching the effect of the constitutional provisions as to such nominations are set forth at some length in the dissenting opinion in the *Rouse case,* but it was decided by the court in that case that the section of the constitution referring to minority representation applied not.

only to the election of candidates for representatives in the General Assembly, but to their nomination under direct pri-. maries. It is now the settled law in this State that a primary is an election as to all candidates to be nominated thereunder. This being so, a qualified voter under any direct primary law is entitled to vote at the primary for three candidates for representatives in the General Assembly,— one vote for each,—or to cumulate his three votes on one or two candidates, the same as at an election. After all the legislation and litigation on this subject, the legislative branch of the government should have been told, clearly and explicitly, by the opinion in this case, just what conditions must be met in order to draft a constitutional law governing legislative nominations by direct primary. If such a law cannot be drafted without rendering "nugatory the constitutional provisions for minority representation," as intimated in the majority opinion in this case, then, in my judgment, the court should have stated such fact in this opinion in language that could not be misunderstood.