## The People of the State of Illinois, Defendant in Error, v. John Walker, Plaintiff in Error.

### Gen. No. 5,710.

1. ELECTIONS—*illegal voting.* A conviction for illegal voting will be sustained where the proof shows a valid election and that defendant was not mistaken about any facts, notwithstanding he may have erred as to the law.

2. ELECTIONS—*illegal voting.* On a charge of illegal voting, the people need not aver or prove every preliminary requirement of the statute in regard to elections, but an allegation that the offense was committed at a general election, held according to law, stating the time, place and object, is sufficient.

3. ELECTIONS—*illegal voting.* Where a mayor and other city officials become entitled to their respective offices by reason of an election, such election is within the meaning of the statute prescribing a penalty for illegal voting.

4. ELECTIONS—*void primary laws.* The rights to office of officials, administering the affairs of a city, cannot be assailed, and

their election will not be held void because of their not having been nominated in the manner prescribed by law.

5. CRIMINAL LAW—*change of venue.* In a petition for a change of venue in criminal proceedings, the allegation that there is a prejudice is not sufficient, the question being whether there is in fact a prejudice in the minds of the inhabitants of the county, sufficient to raise a reasonable apprehension that the accused will not receive a fair and impartial trial.

6. OFFICERS—*public, presumed to have performed duty.* In the absence of proof to the contrary, public officers are presumed to have done their duty.

7. CRIMINAL LAW—*change of venue.* The traverse of a state's attorney to a petition for a change of venue on the ground that the inhabitants of the county are prejudiced against the petitioner, need not state that there is no prejudice existing among the inhabitants of the county.

8. ELECTIONS—*illegal voting.* On a prosecution for illegal voting it is unnecessary to allege and prove that every preliminary requirement of the statute in regard to elections has been complied with.

Error to the County Court of Lake county; the Hon. LOUIS M. RECKHOW, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed April 8, 1913.

C. P. BARNES and G. W. FIELD, for plaintiff in error.

RALPH J. DADY, for defendant in error; COOKE, POPE & POPE and PAUL MACGUFFIN, of counsel.

MR. JUSTICE CARNES delivered the opinion of the court.

Plaintiff in error was, by information filed in the County Court of Lake county, charged with voting at the city election of Zion City there held April 18, 1911, while not a resident of that city. A jury trial resulted in his conviction and sentence to pay a fine of $250, and to be confined in the county jail fifteen days. The information is substantially the same as in the case of People v. Becker, *ante,* p. 446, in which case we are filing opinion herewith. The offense is charged at the same election and many of the questions are the same as in that case, and may be briefly disposed of by ref-

erence to that opinion. It is not claimed that Walker was at that time a resident of said city but it is claimed he then believed he had a right to vote there and the court submitted that issue to the jury. There is no dispute about the facts relating to his place of residence. He testified in his own behalf that he was born January 20, 1886, moved to Zion City with his parents in January, 1902, lived there a part of the time until April, 1909, when his father, with whom he lived, removed with his family from Zion City to a farm some distance therefrom, and lived all the time on that or another farm outside Zion City until after the election on April 18, 1911; that he lived with his parents until January 7, 1911, when his mother died and after that he lived with his father for fifteen months before said election, slept and ate on the farm in Benton township where they were living when his mother died. At the presidential election in November, 1908, the family were living in Waukegan township; he voted there at that election, which was the only time he ever voted before voting at said city election, which he testified he did, after being challenged and after presenting his affidavit of residence in Zion City to the election officers. He says he always claimed his residence in Zion City and believed he had a right to vote there.

The case was tried at the same term, with the same counsel and before the same judge, as the Becker case, *supra*. We hold the information good and that the proof shows a valid election for the reasons stated in our opinion in that case; and see little room for distinction between the mistake claimed to have been honestly made in this case and that claimed in the Becker case. Plaintiff in error was not mistaken about any facts. It is true he had once lived in Zion City and his father owned residence property there, but it was rented to a tenant for a long time before this election, and not in any part occupied by the Walker family; they resided in the country on a farm and made no pretense of residing in the city except for the purpose of

voting. The father claims to have believed that he had a right to vote there and to have so voted before this election, while he was residing in the country, and told his son that he also had a right to vote there. Plaintiff in error may have so believed, but if he did, he was mistaken on a pure question of law, with no admixture of fact whatever; and the jury found after hearing much evidence and being instructed in substance that an honest mistake of the law would excuse him, that he was guilty of the offense charged.

The information was filed October 9, 1911. On November 23, 1911, there was a stipulation filed in this and twenty-seven other similar cases pending at the same time on motions for change of venue that affidavits and counter-affidavits might be filed in one of said cases and considered in all, and in accordance therewith the court considered the petition filed in this case supported by 253 affidavits and the traverse of the State's Attorney supported by 592 affidavits. The petition alleged that "the inhabitants of said county of Lake are prejudiced against your petitioner so that your petitioner cannot receive a fair and impartial trial of said cause in said court." The traverse of the State's Attorney as first filed did not specifically deny the allegation of prejudice on the part of the inhabitants but did allege "that the defendant can have a fair trial in said cause before a jury in said county of Lake." This traverse was afterwards amended by leave of court by inserting an express statement that "there is no prejudice in the minds of the inhabitants of said county of Lake either against the defendant in the above entitled cause or against any of the other defendants in said County Court charged with voting illegally, or having attempted to vote illegally, at any election ever held in said county of Lake." Affidavits filed by plaintiff in error contained the averment "that it is the belief of this affiant that the inhabitants of Lake county are so prejudiced against the above named defendant that he cannot receive a fair and impartial

trial in the above entitled cause in the said county of Lake.'' Affidavits filed by the State's Attorney contained the averment that affiant is not prejudiced against Wilbur Glenn Voliva, or against his followers and supporters, and that he has never heard anybody express himself as prejudiced against them or any of them.

It appears that Zion City has a population of about 5,000 and is located six miles from Waukegan, the county seat, and that Lake county has a population of about 55,000. The affidavits filed by plaintiff in error were from 187 people residing in Zion City, 54 residing in Waukegan and 12 from other parts of the county. The affidavits filed by the State's Attorney were from residents of many townships of the county outside of Zion City, 97 of them in Waukegan. It appears from these affidavits that there had existed for some time in Zion City a controversy between the Christian Catholic Apostolic Church known as ''Zionites'' or ''Volivans'' and the Christian Catholic Church known as ''Independents.'' It had been charged that many members of the Christian Catholic Apostolic Church had voted illegally and many other members of that church had attempted to vote illegally at the township election and the city election in April, 1911; that a special grand jury was called in the Circuit Court of said county in May, 1911, and returned 187 indictments charging illegal voting or attempting to vote illegally at one or the other of said elections; that all the defendants in said indictments, except eight or ten, were members of the Christian Catholic Apostolic Church, or affiliated therewith, and that plaintiff in error was one of the parties so indicted and that the same persons so indicted were now before the County Court on informations filed October 9, 1911, and that Voliva and others had been again indicted at the October Term, 1911, of the Circuit Court of said county on charges connected with said election, which indictments were then pending; that the subject-matter of

these indictments had been much discussed in private and public places throughout said county and a great number of newspaper articles published in papers having a wide circulation in said county, many of them prejudicial to the Voliva faction. The affidavits and counter-affidavits cover about 1,600 pages of record in this case. Aside from the affidavits showing publication of said articles and the circulation of the papers in which they were published the affidavits filed by plaintiff in error were in two forms, stating in substance that affiant had heard much talk among the people of Lake county as to said prosecution to the effect that the defendants were supporters and followers of Wilbur Glenn Voliva, and that the conversation was of a kind to convince affiant that there is a strong prejudice in said county "among many of the inhabitants of said county," not only against Voliva, but against the defendants named in said information and because of that prejudice affiant believes defendant cannot have a fair and impartial trial, etc. The People's affidavits are all in the same form and say that affiant may have heard of said criminal prosecutions but knows nothing about the facts, knows none of the defendants, has never expressed or had any opinion as to the guilt or innocence of any of the parties so charged, and has never heard any person express any opinion as to the guilt or innocence of any of the parties so charged; that affiant is not prejudiced against any of said parties and has never heard anyone express himself in any way indicating a prejudice against any of said parties, and that affiant believes the defendant can have a fair and impartial trial, etc.

It is strongly insisted by plaintiff in error that because there is no statement in the counter-affidavits filed by the People, that there is no prejudice existing among the inhabitants of said county, the change of venue should, as a matter of course, have been granted; that plaintiff in error by his affidavit showed there was

a prejudice and there is no denial of that fact. Counsel mistake the issue presented. It would not have been sufficient to state in their petition for a change of venue that there was prejudice. They did there necessarily state that the prejudice was such that petitioner could not receive a fair and impartial trial of said cause in said court. It was for the court to determine, not whether there was a prejudice, but whether there was such a prejudice as to produce the alleged effect. In most criminal trials that attract public attention, there is some prejudice among the people of the county where the crime was committed against the accused. Indeed, in all trials, civil and criminal, it is true as a rule that the allegation of no prejudice could not be sustained. There would be portions of the community that never heard of the parties and consequently had no prejudice for or against, but there would in most cases be, somewhere in the county, some person, and usually some collection of persons, who were prejudiced, perhaps violently prejudiced, against the party. It is apparent that no State's Attorney could produce affidavits of sensible, reputable people in any case, broader than those furnished here. A man of general acquaintance in his community would be willing to state that he was not prejudiced, and so far as he knew no other person was prejudiced against the defendant, but in a county of 55,000 people, an affidavit would be entirely unworthy of credence, to the effect that there was no prejudice among the inhabitants of that county against the defendant. The question is whether there is in fact a prejudice in the minds of the inhabitants of the county sufficient to raise a reasonable apprehension that the accused will not receive a fair and impartial trial in the county; not whether the evidentiary facts detailed in the petition are proved, but whether upon all the evidence submitted there is reasonable ground for fear that the alleged prejudice actually exists. Jamison v. People, 145 Ill. 357; Price v. People, 131 Ill. 223.

The court did not err in refusing the application for a change of venue.

Many questions are argued in this case which are either the same or similar to those arising on the admission and rejection of evidence, conduct of the People's counsel, giving and refusing of instructions, in the Becker case, *supra*. We have given the record quite careful attention and are of the opinion that they should be disposed of as indicated in our opinion in that case.

It is especially objected that the proof does not show there was a primary election and does not show that the candidates voted for, were put in nomination in any way provided by our election law. It is presumed that public officers do their duty in the absence of proof to the contrary. It is not necessary on a charge of illegal voting that the People either aver or prove that every preliminary requirement of the statute in regard to elections has been complied with. It is enough to allege that the offense was committed at a general election, held according to law, stating when and where the election was held and what it was for. Wharton's Crim. Law (11th Ed.) vol. 3, p. 2336. See also authorities there cited. If the election is held under color of law that is sufficient. McClain on Crim. Law, vol. 2, sec. 942.

It appears from this record that there was an election held in and for Zion City at the time fixed by the statute, at the place appointed by the city council; that over 900 votes were cast for city officers, and while it may be immaterial on the question of the guilt of plaintiff in error, it further appears that the votes were afterwards canvassed and certain officers declared elected. These officers or some of them are presumably administering the affairs of the city by reason of that election. Their right to office could not be assailed if they had been nominated under a void primary law. People v. Strassheim, 240 Ill. 279. And we are not aware of any authority under which the election should

be held void if in fact the candidates were not nominated in the manner prescribed by law.

The authorities cited in our opinion in the Becker case, *supra,* on the question of the sufficiency of the information, include the above citations from Wharton and McClain, and lead to the conclusion that the proof as well as the averment, as to the conditions precedent to, and surrounding the election is sufficient. If a mayor and other city officers became entitled to their respective offices by reason of the election in question, however irregular it may have been, it seems necessarily to follow, that it was an election within the meaning of the statute prescribing a penalty for illegal voting.

The judgment is affirmed.

*Affirmed.*

Mr. Justice WHITNEY took no part in the decision of this case.