SHIRLEY LARSON *et al.*, Plaintiffs-Appellees, *v.* BOARD OF EDUCATION OF BEMENT COMMUNITY SCHOOL DISTRICT NO. 5, PIATT AND CHAMPAIGN COUNTIES, Defendants-Appellees—(Julia A. Greene, Piatt County Clerk, *et al.*, Defendants-Appellants).

Fourth District   No. 4—83—0254

Opinion filed October 24, 1983.

Hugh Finson, State's Attorney, of Monticello, for appellant Julia A. Greene.

Thomas J. Difanis, State's Attorney, of Urbana (Patricia Crowley, Assistant State's Attorney, of counsel), for appellant Dennis R. Bing.

Thomas R. Miller, of Miller, Tracy & Braun Law Offices, P.C., of Monticello, for appellees.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

This is an appeal from an order of the circuit court of Piatt County which held that two ballots in a contested school tax referendum should not have been counted because they were spoiled. Defendants, the county clerks of Piatt and Champaign counties, contend that the circuit court's ruling was error. We affirm.

The Board of Education of Bement Community Unit School District No. 5 in Piatt and Champaign counties (defendant-appellee) caused the following proposition to be placed on the ballot in the general election of November 2, 1982:

"Shall the maximum annual tax rate for operations, building and maintenance purposes of Community Unit School District No. 5, Piatt and Champaign Counties, Illinois, be increased and established at .525% of the value of the taxable property in said District as equalized or assessed by the Department of Revenue instead of .375% the maximum rate otherwise applicable to the next taxes to be extended for that purpose?"

In Piatt and Champaign counties, voters were given ballot cards which listed all candidates and propositions to be voted upon. The voters used a stylus to punch the number on the ballot which corresponded with their intended vote. The ballot cards were then fed into automatic tabulating machines which counted the votes.

On November 9, 1982, the canvassing committee of the school board met and certified that 653 votes had been cast in favor of the proposition and 654 votes had been cast against it. The school board agreed to these tallies.

On November 12, 1982, a petition for a discovery recount was filed with the county clerks of Piatt and Champaign counties requesting a recount of the votes cast in one precinct in Piatt County and one precinct in Champaign County. When the discovery recount was completed, one additional "yes" vote was found in the Piatt County precinct. As a result, the vote tally became tied at 654.

On December 8, 1982, the plaintiffs filed their petition to contest the election, praying for a recount in all of the voting precincts in the school district. The board of education answered the petition and admitted all of the allegations therein. On December 23, 1982, a manual recount was ordered. The manual recounts were thereafter held in Piatt County on January 10, 1983, and in Champaign County on January 11, 1983.

A hearing on the results of the manual recounts was held on January 27, 1983. The plaintiffs questioned the sufficiency of eight Piatt

County ballots. The only witness to testify was the defendant, county clerk of Piatt County. She testified as to the condition of the questioned ballots and the procedures followed by election officials. No Champaign County ballots were questioned.

The trial court entered an order explaining the court's ruling on each questioned ballot. The court ruled that Joint Exhibit Unity 3—1 and Joint Exhibit Bement 1—A should not have been counted as "no" votes as they were spoiled. These ballots are the subject of this appeal. The court also ruled on the other six questioned ballots and ordered the Piatt county clerk to recertify the results of the election. The results then showed that the proposition had carried by a vote of 654 "yes" and 653 "no." Accordingly, the court entered an order on March 4, 1983, declaring that the proposition to increase the tax rate had passed. The defendant county clerks filed timely notices of appeal.

At the hearing below the two ballots at issue on appeal were labeled Joint Exhibit Unity 3—1 and Joint Exhibit Bement 1—A. Joint Exhibit Unity 3—1 consists of two ballot cards, one is the damaged original ballot and one is a duplicate. The original ballot was damaged during tabulation and an accurate duplicate was made at the counting center and initialed by the election judges there. No other labels or marks were made on either ballot. This ballot was a "no" vote on the proposition and was counted in the manual recount.

Joint Exhibit Bement 1—A likewise consisted of two ballot cards. The damaged original in this case was marked "Damaged Ballot #1," but the duplicate was not marked "Duplicate Damaged Ballot #1." Both ballots were properly initialed. This ballot was also a "no" vote and was counted as such during the manual recount.

The trial court held that the failure of the election officials to mark the ballots both "Damaged Ballot" and "Duplicate Damaged Ballot" caused these ballots to be spoiled. As such, they should not have been counted as "no" votes during the manual recount. The court based its decision on section 24A—10(b) of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 24A—10(b)), which states in pertinent part:

> "The judges of election shall examine the ballots and ballot cards to determine if any is damaged or defective so that it cannot be counted by the automatic tabulating equipment. If any ballot or ballot card is damaged or defective so that it cannot properly be counted by the automatic tabulating equipment, the judges of election, consisting in each case of at least one judge of election of each of the two major political parties, shall make a true duplicate ballot of all votes on such ballot card by using the ballot label booklet of the precinct and one of the marking devices of

the precinct. The original ballot or ballot card and envelope shall be clearly labeled 'Damaged Ballot' and the ballot or ballot card so produced 'Duplicate Damaged Ballot,' and each shall bear the same number which shall be placed thereon by the judges of election, commencing with number 1 and continuing consecutively for the ballots of that kind in the precinct. The judges of election shall initial the 'Duplicate Damaged Ballot' ballot or ballot cards, and shall place them in the box for return of the ballots. The 'Damaged Ballot' ballots or ballot cards and their envelopes shall be placed in the 'Duplicated Ballots' envelope.''

The trial court viewed these provisions as mandatory and since they were not complied with here, the ballots were spoiled. The defendants argue, on the other hand, that this statutory language is merely directory and that as long as the duplicate ballots can be matched to the original ballots with certainty, no labeling should be required.

■■ The defendants' argument is contrary to the implicit purpose of this statute. The legislature intended to insure certainty in the matching of duplicate ballots with the damaged original ballots. If the statute's requirements are followed, questions as to the certainty or trustworthiness of the duplicate ballot need never be reached. If the requirements are complied with, propriety is presumed. Moreover, the language of the statute is mandatory and quite clear. If there were to be exceptions or if the legislature had intended that these procedures be merely directory, it would seem that language to that effect would appear somewhere in the Election Code.

■■■ We agree with the circuit court that these statutory requirements substantially contribute to the integrity of the election process. These requirements are a reasonable means of eliminating opportunities for election fraud and uncertainty. It is true in this case that two voters have been disenfranchised; however, the important State interest in the integrity of the election process demands that election officials comply with these provisions. Valid, mandatory statutory provisions that contribute substantially to the integrity of the election process must be enforced by the courts. *Craig v. Peterson* (1968), 39 Ill. 2d 191, 233 N.E.2d 345.

Accordingly, the judgment of the circuit court of Piatt County is affirmed.

Affirmed.

GREEN and MILLER, JJ., concur.