(No. 11827.—Judgment reversed.)
C. T. LAIRD, Appellant, *vs.* MORRIS WILLIAMS, Appellee.

*Opinion filed December 19, 1917.*

1. ELECTIONS—*sections 22 and 26 of the Ballot law are mandatory in requiring election judge to indorse his own initials on ballot.* Sections 22 and 26 of the Australian Ballot law are mandatory in requiring that a judge of election must indorse his own initials upon the ballots that he hands out to the voters to be voted, and ballots cannot be legally counted upon which a judge of election indorses the initials of another judge.

2. SAME—*purpose of section 22 of Ballot law, requiring election judge to indorse initials on ballot.* Section 22 of the Ballot law, requiring a judge of election to indorse his initials on each ballot to be voted, is made mandatory for the purpose of preventing fraudulent voting and to enable the election judges to readily identify the ballots cast as legal ballots.

3. SAME—*when the rule that irregularities in conducting election cannot render votes of innocent electors invalid does not apply.* The rule that the votes of innocent electors are not to be rendered invalid by mere irregularities on the part of election officials which do not affect or change the result of the election cannot be applied to permit such officials, although acting innocently, to disregard the plain provisions of a statute designed to prevent frauds committed in elections.

CARTER, C. J., and CARTWRIGHT, J., dissenting.

APPEAL from the County Court of Pike county; the Hon. PAUL F. GROTE, Judge, presiding.

WILLIAM MUMFORD, and BARRY MUMFORD, for appellant.

W. E. WILLIAMS, and A. CLAY WILLIAMS, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

At the spring election in April, 1917, for town officers, C. T. Laird and Morris Williams were opposing candidates for the office of supervisor of the town of Pleasant Vale, in Pike county. Laird was the candidate on the democratic ticket and Williams was the candidate on the republican

ticket. At the close of the election the election board counted the ballots cast, and determined that out of a total poll of about 600 votes Williams was elected by a majority of 44 votes over Laird. Laird filed a verified petition in the county court of said county to contest the election of Williams. The court at its July term, 1917, after hearing the evidence submitted, found that Williams had received a majority of the ballots cast for supervisor over Laird and that Williams was elected supervisor at the election and was entitled to the office, and entered an order and judgment accordingly and for costs against Laird, who has prosecuted this appeal.

·At the hearing of the cause all of the judges of election and some other witnesses were sworn and testified. The evidence showed without any conflict therein, and the answer of appellee to appellant's amended petition admitted, that there were three judges of the election, to-wit, S. W. Crewes, R. E. Funk and J. N. McNary; that McNary acted as judge in the place of A. J. Kendrick, the supervisor, and at Kendrick's suggestion or appointment, who had declined to act as judge; that McNary did not hand out to voters, as such judge, any of the ballots voted at that election but that all of the ballots were handed out to the voters by the other two election judges; that McNary sat near the ballot-boxes and received the ballots from the voters as they voted and deposited them in the ballot-boxes; that five of the ballots cast at that election had no initial or initials of any one of said election judges endorsed on the backs thereof; that each and every one of the other ballots voted bore on the back thereof the initials or letters "Mc," intended as the initials of McNary, and that they had no further initials thereon; that McNary did not write the letters "Mc" on the back of any ballot "in his own handwriting," but that all of the ballots so marked or endorsed were endorsed by the other election judges, Crewes and Funk,—*i. e.*, by one or the other of them,—with a lead pen-

cil, and that the judges wrote said letters or initials on the backs of the ballots with the knowledge and consent of McNary. The evidence further showed that McNary was present at the ballot-boxes during the whole of the polling period at said election, except for one short absence at dinner and another while he was getting a drink. Men and women voted at the election, and there was only one polling place in said town. The election judges Crewes and Funk endorsed about an equal number of said ballots with McNary's initials, "Mc," thereon. The evidence does not disclose for certain whether any of said ballots were so endorsed by them while McNary was absent. The reasons given by the judges in their testimony, over objection by appellant, for McNary not endorsing and delivering the ballots to the voters were two: First, that he had before that day had an attack of paralysis and could not "grip a pencil to do any good;" and second, that in that town they had a practice or custom that the supervisor, or the judge acting in his stead, should place or cause to be placed his initials on the back of all the ballots. The letters or initials "Mc" were so placed on the ballots aforesaid by common consent of all of said judges, and they were intended as the initials of McNary.

All of the ballots cast at said election were illegal, as contended by appellant. Sections 22 and 26 of the Australian Ballot law, (Hurd's Stat. 1916, pp. 1185-87,) so far as material in this case, provide as follows:

"Sec. 22. Any person desiring to vote shall give his name, and, if required to do so, his residence to the judges of election, one of whom shall thereupon announce the same in a loud and distinct tone of voice, clear and audible. * * * One of the judges shall give the voter one, and only one, ballot, on the back of which such judge shall endorse his initials in such manner that they may be seen when the ballot is properly folded, and the voter's name shall be immediately checked on the register list."

"Sec. 26.   *   *   *   No ballot without the official endorsement shall be allowed to be deposited in the ballot-box, and none but ballots provided in accordance with the provisions of this act shall be counted."

It is hardly possible for language to be used in the statute that would express the intention and direction of the legislature in plainer and more positive terms than does the language of these two sections with reference to the endorsing of initials on the backs of the ballots by the election judges and with reference to the depositing and counting of the same. Those provisions are clearly mandatory. Section 22 positively provides that one of the judges of the election shall endorse his initials on the back of the ballot in such manner that they may be seen when the ballot is properly folded. The endorsement of his initials by another judge of the election is not a compliance with the provisions of this section. Section 26 just as positively provides that no ballot without the official endorsement shall be allowed to be deposited in the ballot-box, and none but ballots provided in accordance with the provisions of the act shall be counted. It cannot be said that a ballot is officially endorsed when one judge of election writes another judge's initials on the ballot in violation of the section positively providing that the latter shall endorse his own initials thereon and which is the official endorsement spoken of in section 26. "Whether a particular statute is mandatory or directory does not depend upon its form but upon the intention of the legislature, to be ascertained from a consideration of the entire act, its nature, its object and the consequences that would result from construing it one way or the other." (36 Cyc. 1157.) "When the statutory provision relates to acts or proceedings immaterial in themselves but contains negative or exclusive terms, either express or implied, then such negative or exclusive terms clearly indicate a legislative intent to impose a limitation, and therefore the statute becomes imperative and requires

strict performance in the manner prescribed." (36 Cyc. 1159.) If we follow these rules of construction we are compelled to hold that section 26 is mandatory, and that we must exclude all ballots from the count that are not endorsed as the statute requires,—*i. e.*, by the initials of the judge who handed out the ballots. Section 26 positively provides, in substance, that no ballots not so endorsed shall be allowed to be deposited in the ballot-box or counted.

This court has frequently held that said sections 26 and 22, with reference to the endorsement of the judge's initials, are mandatory. In *Kelly* v. *Adams*, 183 Ill. 193, after quoting section 26, the court said: "To ignore this provision of the statute and allow ballots to be counted which do not contain the official endorsement would authorize the voting of ballots that might have been surreptitiously obtained or copied, and one of the purposes of the Ballot law be entirely frittered away and the door opened for fraud. The absence of the official endorsement would have been sufficient cause for the rejection of this ballot." The ballot under consideration in that case did not have the initials of any judge endorsed thereon.

In *Choisser* v. *York*, 211 Ill. 56, this court said: "The statute is, not only that the initials of one of the judges shall be placed upon the ballot, but that the particular judge who hands the ballot to the voter shall endorse his initials thereon. Every man's handwriting possesses certain peculiarities which tend to distinguish it from every other handwriting. By writing his initials upon ballots the judge doing so should be able to distinguish those which are genuine, and could generally do so." The court there had under consideration ballots that were stamped with one of the judge's initials with a rubber stamp, the stamp being used not only by himself but by one of the other election judges also.

The question for decision in this case was before this court in the case of *Winn* v. *Blackman*, 229 Ill. 198. The

decision of the case, however, did not turn upon that point and the court did not decide it. One member of the court took no part in the decision of the case, and the other six members appear to have been evenly divided on the question.

We have no hesitancy in saying, after thoroughly considering the matter, that the statute is mandatory in its provision that the judge of the election must endorse his own initials upon the ballots that he hands out to the voters to be voted, and that ballots cannot be legally counted upon which a judge of election endorses the initials of another judge and hands them out to the voters to be voted and without endorsing his own initials thereon. The statute is evidently made mandatory for the purpose of preventing fraudulent voting, not only by means of the endless-chain system of voting, but to prevent any ballot from being counted that bears a counterfeit endorsement of a judge's initials. By following the requirements of the statute each judge can generally readily recognize an endorsement of his own initials in his own handwriting, and much more readily than he can identify as genuine his endorsement of the initials of some other judge although in his own handwriting. If each one of the judges were allowed indiscriminately to endorse the initials of another judge on a ballot, the judge whose initials are endorsed on the ballot could not be expected to so readily identify the initials as the handwriting of either one of the other judges as he could his own initials written by his own hand. In many cases he might not be able to identify them at all. The two judges who thus indiscriminately endorsed the third judge's initials on the ballots would be poorly able to identify any of the initials so endorsed unless he endorsed them himself, and they would not be able to so readily identify his endorsement of another's initials as he would his own endorsement. The result of permitting such a practice would take away the law's best weapon to prevent fraudulent ballots from getting into the ballot-box. If two judges, as in

this case, endorse a third judge's initials they would at once disarm themselves from readily detecting fraudulent ballots that might be endorsed by somebody not a judge of the election. The judge of election whose initials are endorsed would, of course, know that he did not endorse the initials, and would take it for granted, generally, that one of the other judges did endorse them. If either one of the other judges looked at an endorsement he knew not to be his own he would generally take it for granted that the other judge endorsed the third judge's initials, and therefore a fraudulent ballot endorsed by an outsider not authorized to endorse ballots would easily escape detection by any one or all of the judges. If the statute be followed in its requirements, the judge whose initials were endorsed on the ballot would in each instance readily detect all forgeries of his initials by an outsider, hence the reason for the law and the necessity for construing it as mandatory in the particular provisions aforesaid.

This court has never departed from the strict letter of the statute as to the endorsement of initials on the ballots except in one instance, in *Perkins* v. *Bertrand,* 192 Ill. 58. In that case it was held that where an election judge endorses only one of his initials, or his full name instead of his initials, the law is substantially complied with. The reason given was that an election judge may identify one initial endorsed on a ballot as readily as he could all of his initials. It is, of course, true that he could as readily identify his name written in full on the ballot as he could were his initials, only, endorsed. The purpose of the law,—the ability of the election judges to readily identify the ballots cast as legal ballots,—was held to be attained in that case and that therefore the law was substantially complied with. At the same time this court there held that the statutory official endorsement is mandatory.

Other courts in this country have declared similar provisions pertaining to the official endorsement of the ballots

mandatory and have refused to count or permit to be counted ballots cast by voters not endorsed substantially as required by statute. In Iowa and North Dakota the statutes contain provisions requiring one of the election judges to endorse his initials on the back of the ballots. The Supreme Courts of both of those States have held that the law is mandatory as to that provision and have held that a ballot containing no endorsement of initials is illegal. *Kelso* v. *Wright,* 110 Iowa, 560; *Lorin* v. *Seitz,* 8 N. D. 404; *Miller* v. *Schallern,* 8 id. 395.

In *Slaymaker* v. *Phillips,* 5 Wyo. 453, it was held that the absence of the official stamp or the judge's name or initials on the exterior of the ballot, when so folded as to conceal the ticket upon its face, will cause its rejection under a statute providing that a "ballot which is not endorsed by the official stamp or has not the name or initials of the · judge of the election * * * shall be void and shall not be counted."

In *Blue* v. *Allee,* 184 Ind. 302, the court held that the initials of one clerk are not sufficient, and that the statute requiring the initials of both poll clerks was mandatory.

In West Virginia the election laws contain two provisions with reference to the ballots, as follows: (1) "On the back of each sheet of paper on which the ballots are printed as aforesaid, and as near to the center thereof as may be, shall be printed the words 'Poll clerks,' and under them each poll clerk shall write his name before the ballot is delivered to the voter." (2) "Any ballot which is not endorsed with the names of the poll clerks, as provided in this statute, shall be void and shall not be counted." In the case of *Kirkpatrick* v. *Board of Canvassers,* 53 W. Va. 275, objections were raised to ninety ballots upon which one of the clerks, James Humphreys, had placed his own name and that of J. R. Ford, the other poll clerk. Objections to sixty-eight ballots in another precinct were, that one of the election commissioners wrote the names of the

poll clerks on the ballots. The court held the law mandatory and rejected the ballots in both precincts because not endorsed as required by the statute.

In Arkansas the statute relating to elections provided that "at least one of the judges shall write his name or initials on the back thereof," and that "no ballot shall be received from any elector or deposited in the ballot-box which shall not have the name or initials of at least one of the judges endorsed on the back of it." The Supreme Court of that State held that all ballots on the back of which the initials of a judge were not written by his own hand should be thrown out and not counted. *Rhodes* v. *Driver,* 69 Ark. 501.

It is the general rule that the votes of innocent electors are not to be rendered invalid by mere irregularities on the part of election officials which do not affect or change the result of the election, unless the statute expressly declares such irregularities fatal. (*Rexroth* v. *Schein,* 206 Ill. 80.) As our statute makes it absolutely necessary that every ballot shall bear the official endorsement in the manner aforesaid, we must hold that the election in this case was void, although there is no evidence in the record that discloses any fraud or intended fraud upon the part of the election judges. We think it would be a very dangerous rule to establish that the election judges may disregard the plain provisions of this statute, and thereby defeat the intention of the law to prevent actual frauds from being committed in elections and to disarm the constituted authorities of the efficient means provided by the statute for detecting such frauds. Such salutary laws should not be repealed, in effect, by the action of election judges simply because their mistakes are innocent or because an honest voter may lose his vote by holding such mistakes fatal. It is more preferable that a voter should lose his vote by the innocent action of the judges and by his own neglect to see to it that he votes a ballot properly endorsed by a judge, than to open the

doors to wholesale fraud and corruption. Every voter is presumed to know the law, and by proper care on his part he can know, and should know, that the ballot delivered to him is properly endorsed by one of the election judges with his own initials.

For the reasons aforesaid we hold that there was not a single legal ballot cast at the election in question, and for that reason no one was elected as supervisor at that election.

The judgment of the county court is therefore reversed.

*Judgment reversed.*

CARTER, C. J., and CARTWRIGHT, J., dissenting:

We cannot concur with the reasoning of the foregoing opinion. Section 22 of the Australian Ballot law, quoted in the opinion, gives all that is required by law as to the endorsing of the initials of the judge upon the ballot. This court has said that the object of requiring one of the judges to endorse his initials on the ballot which is given the voter is to identify the ballot as one which had been cast at the election. (*Perkins* v. *Bertrand,* 192 Ill. 58.) It was also held in that case that the endorsing of one initial of a judge was a substantial compliance with the statute and all that is required. It was further held in the same case that the endorsing of the full name of the judge was a substantial compliance with the statute and justified the counting of such a ballot. Of course, if this provision of the statute is considered mandatory in the full sense of that term, then, in order to comply, all of the initials of the judge who hands out the ballot must be endorsed thereon and not one initial, alone. Neither is the full name a compliance. The first time that this court ever squarely decided that a ballot without any initials of any of the judges could not be counted was in *Slenker* v. *Engel,* 250 Ill. 499, and while that decision was by a divided court it is now the law in this State. In *Gill* v. *Shurtleff,* 183 Ill. 440, this court held that where a legal voter properly prepares his ballot and the same is

placed in the ballot-box it should be counted, though some one of the election officials, without participation of the voter, made an endorsement on such ballot which might serve as a distinguishing mark. That rule has been sanctioned by this court in *Perkins* v. *Bertrand, supra,* (p. 64,) and *Kerr* v. *Flewelling,* 235 Ill. 326. Never before the foregoing opinion has the majority of this court held that, though the initials of one of the judges were endorsed on the ballot before it was given out, if the judge who gave out the ballot endorsed the initials of another judge instead of his own it could not be counted. While the point was raised in *Winn* v. *Blackman,* 229 Ill. 198, it is clear from reading the opinions in that case that the majority of the court did not agree with the holding in the foregoing opinion. The doctrine laid down in this opinion makes it possible for the voter to be disfranchised by the judges of election and gives no practical opportunity for the voter to prevent this. In a large city many voters frequently are personally unacquainted with some, if not all, of the judges, and while it is held a correct precaution to require the voter to see that a ballot when it is given him is endorsed with the initials of one of the judges, it is impossible, unless a voter knows personally each of the judges, to decide whether the judge who gives out the ballot has endorsed his own initials on the ballot. In our judgment it is most unwise to deprive a voter of his vote through the action, mistaken or otherwise, of the election officials where the voter himself is not at fault and the ballot itself shows that it is a genuine official ballot, delivered to the voter by one of the judges.

We do not think the argument of the opinion that a judge can more readily recognize his own handwriting when he writes his own initials than he can if he writes the initials of another judge should be controlling in the construction of this statute. It seems to us that argument has very little merit. If the purpose of the law in requiring these initials is to require the voter to be sure that the ballot is a

genuine one by causing him to examine whether the initials of a judge are upon the back of the ballot before it is voted, that purpose is fully accomplished if one of the judges in his own handwriting places the initials of one of the other judges upon the back of the ballot. It seems to us that the ballot can be, for all practical purposes, as readily identified by the judge under such circumstances as it could if he wrote his own initials. Beyond question these ballots were genuine ballots, and we think they should be counted.

It was not the intention of the legislature to require the statute to be construed in the manner this opinion construes it, and a conclusion is reached not only unjust, but one that will, in our judgment, fail to aid in accomplishing the chief purpose intended by the Australian Ballot law,—that is, that the ballot should be absolutely secret and that every legal voter should have a right to cast his vote secretly and have it counted as it was cast.

---

(No. 11672.—Reversed and remanded.)
THE PEOPLE *ex rel.* Curtis W. Hackman *et al.* Appellees,
*vs.* HENRY J. GUNN *et al.* Appellants.

*Opinion filed December 19, 1917.*