(No. 33035.—)

JOE C. GRIFFIN, Appellee, *vs.* JOHN P. RAUSA, Appellant.

*Opinion filed March 17, 1954.*

HENNESSY, LENNON & KING, SCHROEDER & SIMPSON, JOHN A. QUIGLEY, and ALBERT J. JANTORNI, all of Chicago, for appellant.

JACK W. OSBORN, and JOHN F. TYRRELL, both of Chicago, for appellee.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

At the general election held in the city of Northlake on April 21, 1953, the appellant, John P. Rausa, and the appellee, Joe C. Griffin, were candidates for the office of mayor of said city. The appellant was the candidate of the United Citizens party and the appellee the candidate of the

Northlake Voters League party. The returns of the election officials showed appellant to have received 1102 votes and appellee 1100 votes. Following a canvass of the votes confirming the election officials' returns, appellee filed a petition in the circuit court of Cook County to contest the election, and after a contested hearing the court entered an order finding that 2226 official ballots were cast for office of mayor of city of Northlake; that 1114 ballots were cast for Joe C. Griffin for mayor and 1112 were cast for John P. Rausa for mayor; that Joe C. Griffin received the highest number of votes and that he be declared the duly elected mayor of the city of Northlake. From this order appellant prosecutes this appeal and appellee assigns cross errors.

The determination of this election contest depends entirely upon the validity of 16 ballots, being numbered 1 to 16, the originals having been certified to, and they are before the court. Of these 16 ballots involved there is no controversy as to 6 ballots, leaving for this court's determination the validity of ballots numbered 1, 2, 3, 5, 6, 8, 9, 14, 15 and 16.

Appellant contends that three ballots counted for the appellee, namely, ballots number 3, 9 and 14 bore distinguishing marks which invalidated them. We think it will aid in the disposition of these ballots if we discuss briefly what is a "distinguishing mark." Nothing is said in the Australian Ballot law about distinguishing marks, but this court, in *Parker v. Orr,* 158 Ill. 609, said (p. 617), "If a mark or character is used which, though indicating an intention to vote a particular party ticket or for certain candidates, at the same time serves the purpose of indicating who voted it, thereby furnishing the means to designing persons of evading the law as to secrecy, the ballot should be rejected. It logically follows that the voter's intention must be manifested by a cross, substantially in the place designated, which the judges of elections, or the

court on a re-count, can see was an honest attempt to follow the directions of the law." This decision was one of the first in this State to discuss the Australian Ballot law as to the marking of the ballot, and it was there stated that said law did not change the rule that if the intention of the voter can be fairly ascertained from his ballot, even though not in strict conformity with the law, effect will be given to that intention; that the voter shall not be disfranchised or deprived of his right to vote through mere inadvertence, mistake or ignorance, if an honest intention can be ascertained from his ballot, unless to give effect to such intention would tend to destroy the secrecy of the ballot. Whether a given mark upon a ballot is a distinguishing mark is largely a question of fact to be determined from an inspection of the original ballot itself. (*Bullman* v. *Cooper,* 362 Ill. 469; *Kerr* v. *Flewelling,* 235 Ill. 326; *Winn* v. *Blackman,* 229 Ill. 198.) This court has repeatedly held that any deliberate marking of a ballot by a voter that is not made in an attempt to indicate his choice of candidates, and which is also effective as a mark by which his ballot may be distinguished, should be considered as a distinguishing mark. However, if it appears that marks were placed thereon as a result of an honest effort by the voter to indicate his choice of candidates and not as an attempt to indicate the identity of the voter the ballot should not be rejected for candidates for whom a choice is expressed according to law. *Rexroth* v. *Schein,* 206 Ill. 80.

Almost any mark made with a lead pencil or pen, whether a cross, an irregular or a straight line, can be so put upon a ballot as to be recognized by the voter himself. Indeed, a mark might be used intentionally as a distinguishing mark when there was nothing on the ballot that so indicated to one not informed of its purpose. The object of our Election law is to obtain a correct expression of the intention of the voters without having the manner in which any particular voter has cast his vote known to any-

one save himself, with the necessary exception of the election officials, who may assist certain voters according to law. From the standpoint of public policy it might be urged that the law should require the cross to be made by a stamp, and that the act should have been so drawn that any mark on the ballot other than a cross in the proper place would be a distinguishing mark; but, as our law now stands, to say that any mark on the ballot, other than a cross in the proper place, necessarily makes it void is to go beyond the language of the statute and is in direct conflict with certain provisions found therein. (*Parker* v. *Orr,* 158 Ill. 609.) The voter, however, endangers the secrecy of his ballot by placing thereon any mark or writing other than a cross or crosses in the manner provided by law. Whether any other mark or writing is a distinguishing mark must be determined from an examination of the ballot, having in mind the general rules heretofore laid down by this court.

On ballot number 3 there is a cross in the Voters League circle. There also appears a check mark in the square in front of each candidate on that ticket. Appellant contends that the presence of the cross in the circle indicates that the voter knew how to properly mark a ballot and the check mark in the square in front of the names was in no way a cross, and the voter must have known that he was not voting or emphasizing his vote, but was putting improper marks upon his ballot. We have carefully reviewed the many cases cited by the appellant on this subject where the court has considered the irregular marking of numerous ballots. Appellant relies heavily upon the case of *Greene* v. *Bjorseth,* 350 Ill. 469. In that case this court said (page 481): "Ballot 431, precinct 16, should not have been counted for the appellee. It has a check-mark near the square before the appellee's name and smaller check-marks indicating the names of the candidates for whom the elector voted." The court did not suggest

that it was rejecting this ballot because of distinguishing marks. Appellant contends that in the same case the court held a check mark to be a distinguishing mark on ballot number 121, precinct 5. On page 492 of the opinion the court said the ballot "has the square opposite the appellee's name almost obliterated by erasure. A mark appears close to the place where the top line of the square would have been, which the appellee says is a cross in the place where the square had been. It appears to be simply a check-mark, and the ballot was properly rejected." Again, contrary to appellant's contention, the court did not reject this ballot because of a distinguishing mark. On page 482 of the same opinion the court said: "Ballot 555, precinct 19, has a check-mark to the right of the name of the candidate George Haywood. It is a distinguishing mark and the appellant's objection to it should have been sustained." It is to be noted the check mark appears to the right of the name of the candidate and not within the square before the candidate's name. In the same case ballot 284, precinct 26, was also rejected by the court, having a check mark and scroll to the right of the appellee's name, and likewise ballot 243, precinct 27, for like reason was rejected. Appellant has not cited a single instance where this court has ruled that a check mark placed in the square before the candidate's name has been held to be a distinguishing mark and we are of the opinion that the voter in the instant case, by putting a check mark in each of the squares before the candidates' names, only intended to emphasize his intention of voting for the candidates on the Voters League party and did not intend to place thereon distinguishing marks. The court properly counted ballot number 3 for the appellee.

Appellant contends that on ballot number 9 there is a cross in the circle at the head of both the United Citizens and the Voters League tickets, but in the circle and beyond it at the top of the United Citizens ticket, there are pencil

marks, and that these marks have not completely obscured the cross and the marks go beyond the limits of the circle. This, also, it is contended is a distinguishing mark. An inspection of the ballot discloses an evident attempt of the voter to completely block out the cross in the circle, the voter apparently having made a mistake as to his party or changed his mind, as he had a right to do. We do not consider the blocking-out process to be a distinguishing mark. (*Slenker* v. *Engel,* 250 Ill. 499; *Greene* v. *Bjorseth,* 350 Ill. 469.) The court properly counted this ballot for appellee.

On ballot number 14 there is a cross in the Voters League circle. Commencing under the circle there is a long arrow extending downward to a point below the area in which the candidates' names are printed. This arrow points to another arrow commencing directly below which curves upward to the right and points to the names of the candidates on the Voters League ticket. Appellant contends this marking constitutes a distinguishing mark. This court had a similar situation presented to it in *Barlick* v. *Kunz,* 375 Ill. 318, and at page 323 the court said: "Ballot Z-5 has a long deep arrow immediately below the circle at the head of the column captioned 'Republican Party,' pointing to the names of the candidates for the offices of supervisor, assistant supervisor and highway commissioner, the only offices for whom votes could be cast. Ballot Z-3 has a slightly shorter arrow, less heavily indented, in the same place. The only other marks on these two ballots are crosses in the circle at the head of the Republican column. An examination of the ballots leads to the conclusion that the additional marks reflect the honest efforts of the voters to indicate their intention rather than to place distinguishing marks on their ballots. The objections of appellant to ballots Z-3 and Z-5 were properly overruled." And again, in *Winn* v. *Blackman,* 229 Ill. 198, where a comparable situation exists the court said: (at page 219,) "Ballot 104

is a straight democratic ballot, * * *. To the right, and below the name of Gaumer, is an index hand pointing to the name of Gaumer, * * *. While such a character might be a distinguishing mark, still we are satisfied that the index finger pointing to the vote for the prohibition candidate for the legislature was placed there with an honest purpose and out of an abundance of caution lest the vote should be overlooked. In our opinion the court erred in refusing to count this ballot for appellee." In the same case the court held that ballot number 107 which had a long irregular mark or line appearing near the bottom of the ballot was without a distinguishing mark. We are of the opinion the trial court did not err in counting ballot number 14.

Appellant contends that ballot number 15 was improperly counted for appellee. This ballot has a clear cross in the circle of the Voters League ticket with a blotting-out of what was originally a cross in the United Citizens party circle. While the cross is still distinguishable we are firmly convinced from a careful examination of the ballot that it was the intention of the voter to erase or obliterate the cross. The trial court properly counted this ballot.

Appellant contends that ballots number 5 and 6 marked for appellant, and rejected by the trial court, should have been counted. Ballot number 5 has a cross in the circle for the United Citizens ticket and is properly initialed by a judge of election in precinct 1, and has the word "spoiled" written across the back and was found in the envelope marked "defective and objected to ballots." Ballot number 6 has a cross in the circle for the United Citizens ticket and is properly initialed by a judge of election in precinct 1. It has no other markings on the back, is not marked "spoiled" but was found in the envelope marked "defective and objected to ballots." Ballot number 4 over which there is no dispute was also found in the same envelope:

On the trial of this cause three judges of election were called as witnesses. One judge testified that three voters turned in ballots and that she reissued three ballots, that she inserted the three ballots returned in an envelope marked "spoiled, not voted." Another judge testified that she took three ballots from said envelope at the close of the day's voting, counted three, wrote "spoiled" on one ballot and never finished writing "spoiled" on the others, as she was interrupted by a disturbance in the polling place. She also testified that the word "spoiled" on the back of Ballot "5" was in her handwriting. The third judge testified that she did not handle the ballots in said envelope and did not see them taken out. Each of the three judges identified her own signature on the sealed envelope containing the ballots.

The Election Code provides in part that "Ballots not counted shall be marked 'defective' on the back thereof, and ballots to which objection has been made by either of the judges or challengers shall be marked 'objected to' on the back thereof, and a memorandum signed by the judges stating how it was counted shall be written upon the back of each ballot so marked, and all ballots marked defective or objected to shall be enclosed in an envelope securely sealed and so marked and endorsed as to clearly disclose its contents." Ill. Rev. Stat. 1953, chap. 46, par. 17-16; Jones Ann. Stat. 43.880.

Appellant contends that the language of the statute with respect to "defective" and "objected to" ballots is mandatory and that the absence of any marking on the back of ballot number 6 and the utilization of the word "spoiled" on the reverse side of ballot number 5 is not substantial compliance with the mandatory language of the statute. He cites *Perkins* v. *Bertrand,* 192 Ill. 58, and *Barlick* v. *Kunz,* 375 Ill. 318, as supporting this proposition. In *Perkins* v. *Bertrand* (on page 66) the court said: "The court counted a number of ballots found in the envelopes con-

taining 'defective and objected to' ballots. Before counting the same the judges of the precincts from which the ballots came were called and testified that the ballots were voted by legal voters, and gave their reasons for not counting the same, none of which appear to be valid. Said ballots were official, had the initials of one of the judges of the respective precincts on the back thereof, were properly marked by the voter, and were enclosed in envelopes securely sealed and so marked and endorsed as to disclose their contents, as provided by section 26 of the Ballot Act. The court did not err in counting such ballots." The facts in the cited case are entirely different from the facts as to the ballots before us, since the former contained no showing that other ballots were given out to the voters in place of the ones questioned.

Appellant has also cited the case of *Barlick* v. *Kunz,* 375 Ill. 318, 322, where it was held that a ballot, which had been placed in an envelope marked "defective ballot envelope" but was not shown to be otherwise defective, should be counted. There was no evidence that another ballot was issued in place of the ballot in question, and the decision is therefore not applicable. In the case at bar, ballots 5 and 6, having been replaced by other ballots given to the voter, were properly rejected by the trial court.

Lastly, appellant contends that ballot number 16 should have been counted for the appellant. This ballot, an absentee ballot, was received by the city clerk and turned over to the election board after it became *funtus officio.* It was placed with the sealed returns and ballots and subsequently opened on the recount. It contained no initials of the judges and was not in the ballot box at any time. Under such circumstances it was properly rejected. *Siedschlag* v. *May,* 363 Ill. 538, relied upon by appellant, is readily distinguishable. In that case the absent voters' ballots were properly initialed, but instead of placing them in the ballot box the judges put them on a table, opened the

ballot box, dumped the contents on top of the absent voters' ballots, and then proceeded to count them. We held that the provision requiring such ballots to be deposited in the ballot box was merely directory, and that failure to comply did not render the ballots void. A different situation is presented, however, where the ballots are not initialed. Statutory provisions requiring the judge to endorse his initials on the ballot are mandatory, and only such ballots as conform to those provisions may be counted. (*Tuthill v. Rendelman,* 387 Ill. 321.) Such provisions are designed to prevent frauds from being committed in elections, and to afford efficient means for detecting frauds, and the mandatory language of the statute must be given effect.

While we are reluctant in the instant case to disfranchise the voter because of the failure of the city clerk to deliver the absentee ballot in apt time to the polling place so it could have been properly initialed, placed in the ballot box and counted, nevertheless we believe it would be a dangerous rule to permit this practice to creep into the conduct of our elections. The rule concerning mandatory provisions must be applied to the instant case, and ballot number 16 cannot be counted.

The appellee has filed cross errors contending that the trial court erred in not counting ballots numbered 1 and 8 for appellee and in counting ballot number 2 for appellant. In view of our affirmance of the trial court's finding as to the ballots challenged by the appellant, consideration of appellee's cross errors becomes unnecessary and would serve no useful purpose.

The order of the circuit court of Cook County is therefore affirmed.

*Order affirmed.*