(No. 36524.—)
ALFRED J. MORANDI, Appellee, *vs*. ELVA HEIMAN, Appellant.

*Opinion filed November 30, 1961.*

Hupp & Irion, of Ottawa, for appellant.

Daniel McMullen, of Streator, for appellee.

*Mr. Chief Justice Bristow delivered the opinion of the court:

Defendant appeals directly to this court from a judgment of the county court of La Salle County entered in an election contest determining plaintiff to be the duly elected county auditor of La Salle County.

At the general election on November 8, 1960, Elva Heiman, Appellant, was the Republican candidate for County Auditor of La Salle County and Alfred J. Morandi was the Democratic candidate. They were the only candidates for that office. By the official canvass of votes Heiman was deemed elected with 26,522 votes to Morandi's 26,470. Morandi, pursuant to section 22—6 of the Election Code (Ill. Rev. Stat. 1959, chap. 46, par. 22—6), requested a discovery recount in all 98 precincts of La Salle County. The total vote count determined by this discovery gave Heiman 26,683 votes and Morandi 26,475; however, the recount also disclosed that 739 of the ballots counted for

---

* This opinion was prepared by the late Mr. Chief Justice Bristow and was adopted and filed as the opinion of the court.

Heiman and 403 of the ballots counted for Morandi were uninitialled. Morandi thereupon filed an election contest to have all the uninitialled ballots declared void, which, if successful, would result in his victory by 128 votes.

The case went to hearing on February 8, 1961 at which time Heiman and Morandi entered into a stipulation in which the candidates agreed as to the votes received by each according to the official canvass, the votes received by them in each precinct according to the discovery recount, the number of ballots received by them lacking the initials of any judge of election, and the number of ballots cast by absentee voters in each precinct (*i.e.,* collectively the physically incapacitated voters, absentee voters, and absentee voters in the military or naval service.) It was also agreed that there was no knowledge of fraud or corruption in respect to the manner in which the election was held, the ballots counted or preserved, or in any other manner. After acceptance of the stipulation by the court, Morandi moved that all uninitialled ballots be held illegal and void, and removed from the vote count. Heiman objected to the motion and contended that the court should hear evidence which would establish that the vast majority of the 1142 uninitialled ballots were cast by absentee voters and that such ballots, for both candidates, can be clearly identified as such; that such proof would embrace a sufficient number of absentee ballots to give the election to Heiman; that it was because of a misunderstanding of the law that the judges of election did not initial the absentee voters' ballots. The court denied the offer of proof, and upon holding all uninitialled ballots to be invalid, entered judgment for Morandi and declared him to be the elected county auditor.

Appeal to this court is pursuant to section 23—30 of the Election Code. Ill. Rev. Stat. 1959, chap. 46, par. 23—30.

Appellant concedes the correctness of our holding in *Laird* v. *Williams,* 281 Ill. 233, wherein we declared the

initialling provisions of the election law mandatory and thus held void uninitialled ballots cast by voters at the polls. She further concedes that our subsequent decisions, *McCreery* v. *Burnsmier,* 293 Ill. 43; *Allen* v. *Fuller,* 332 Ill. 304; *Sibley* v. *Staiger,* 347 Ill. 288; *Talbott* v. *Thompson,* 350 Ill. 86; *Greene* v. *Bjorseth,* 350 Ill. 469; *Lacy* v. *Rhodes,* 369 Ill. 167; *Barlick* v. *Kunz,* 375 Ill. 318; *Griffin* v. *Rausa,* 2 Ill.2d 421, have applied the principle of *Laird* to clearly preclude the counting of uninitialled absentee ballots. Appellant, however, argues that those cases which have applied the *Laird* principle to absentee voters ballots have failed to discuss or recognize that at the time of the *Laird* decision there was no provision in the law for absent electors to vote, that a different wording of the law prescribes the method of absentee voting, and that there is a difference in the manner in which the voters present at the polls and the absent voters are able to protect the ballots they have cast. For these and reasons of public policy, it is urged the application of a mandatory rule should be reappraised and the initialling requirements as applied to absentee ballots be deemed directory.

Such contentions necessitate examination of the Election Code and interpretations thereof by this court. Present section 17—9 of the Election Code (Ill. Rev. Stat. 1959, chap. 46, par. 17—9), is the reenactment of section 22 of the former Ballot Act of 1891; present section 17—16 was section 26 of the Ballot Act. Both sections existed prior to the passage of the first Absent Electors Ballot Law in 1917. Laws of 1917, p. 434.

So far as is pertinent, section 17—9 provides: "One of the judges shall give the voter one, and only one of each ballot * * * *on the back of which ballots such judge shall indorse his initials in such manner that they may be seen when each such ballot is properly folded,* and the voter's name shall be immediately checked on the register list." (Emphasis supplied.)

The material part of section 17—16 is as follows: "No ballot without the official endorsement shall be deposited in the ballot box, and *none but ballots provided in accordance with the provisions of this Act shall be counted.*" (Emphasis supplied.)

Article 19 of the Election Code treats with voting by absent electors and it is substantially the Absent Electors Ballot Law of 1917. Section 19—9 of this article deals with the casting of such electors' ballots. As pertinent, such section reads as follows:

"At the close of the regular balloting and at the close of the polls the judges of election of each voting precinct shall proceed to cast the absent voter's ballot separately, and as each absent voter's ballot is taken shall open the outer or carrier envelope, announce the absent voter's name and compare the signature upon the application with the signature upon the affidavit on the ballot envelope. In case the judges find the affidavits properly executed, that the signatures correspond, that the applicant is a duly qualified elector in the precinct and the applicant has not been present and voted within the county where he represents himself to be a qualified elector on such election day, they shall open the envelope containing the absent voter's ballot in such manner as not to deface or destroy the affidavit thereon, or mark or tear the ballots therein and take out the ballot or ballots therein contained without unfolding or permitting the same to be unfolded or examined, *and having endorsed the ballot in like manner as other ballots are required to be endorsed, shall deposit the same in the proper ballot box or boxes* and enter the absent voter's name in the poll book the same as if he had been present and voted in person." (Emphasis supplied.)

Section 19—14 provides that the sections of the Absent Voters' Law, "shall be deemed to provide a method of voting in addition to the method otherwise provided in this Act."

Article 20 of the Election Code, is a separate method of

voting by absent electors in the military or naval service, and section 20—9 thereof, dealing with the voting of ballots by the absentee electors, contains the identical endorsement provisions of article 19, section 19—9.

Appellant argues that nowhere in article 19 or in the Absent Electors Ballot Law of 1917 is or was there an express provision that an uninitialled absent voter's ballot should not be counted, such as appears in article 17, section 17—16; therefore, the initialling requirement as applied to absent voters' ballots should as a matter of construction be deemed directory. Such position rests upon the fact that article 19, as evidenced by the comments of the Drafting Commission, is the Absent Electors Ballot Law of 1917, and that the Election Code adopted in 1943, which "codified the election and primary laws of this State" stated that, "The provisions of this Act, so far as they are the same as those of any prior statute, shall be construed as a continuation of such prior provisions, and not as a new enactment." Ill. Rev. Stat. 1959, chap. 46, par. 1—2.

Clearly, apart from where there is express incorporation, articles 19 and 20 of the Election Code must for some purposes be read in conjunction with and implemented through the previously enacted general election law now appearing in article 17. As applicable to present issues the necessity for such implementation is evidenced from the fact that articles 19 and 20 are expressly additional methods of voting only, (Ill. Rev. Stat. 1959, chap. 46, art. 19; par. 19—14; art. 20, par. 20—14), and that section 17—16 is the only provision in the Election Code for the counting of the ballots here involved.

Our decision in *Laird* v. *Williams,* 281 Ill. 233, 236, 237, expressly found that section 26 of the Ballot Act (present section 17—16 of the Election Code) was mandatory, since its language positively provides in substance, that no ballots not endorsed as provided shall be allowed to be counted. We also stated that the language of the section providing for

initialling, (present section 17—9) and the counting provision (present section 17—16) could hardly express the intention and direction of the legislature in plainer and more positive terms, and that those provisions did not therefore simply provide directions that certain things or acts should be done within a particular time or in a particular manner. We also found applicable that familiar principle of statutory construction which binds this court to hold an election or part thereof void regardless of all considerations touching policy or impolicy, materiality or immateriality, where a statute imposes duties upon officials connected with the holding of an election and by express language provides that the omission to perform the same shall render the election or part thereof void. *Laird* v. *Williams,* 281 Ill. 233, 236; *People ex rel. Agnew* v. *Graham,* 267 Ill. 426, 437, 438; *People ex rel. Comerford* v. *Miller,* 314 Ill. 474, 478.

Subsequently such mandatory construction was repeatedly applied to bar the counting of unititialled absentee ballots, beginning in *McCreery* v. *Burnsmier,* 293 Ill. 43 (1917) wherein we stated that for purposes of a mandatory requirement of initialling "the Absent Electors Ballot Law of 1917 does not differ in that respect from the Australian Ballot Law * * *", and most recently in *Griffin* v. *Rausa,* 2 Ill.2d 421 (1954).

Over the forty-two years of such application the legislature has never seen fit to change, in any manner here pertinent, the language of the absentee voting laws or the previously referred to provision of article 17 which we have held applicable to the counting of absentee ballots. Over this period of time we have consistently refused any offer of proof which attempted to validate such ballots by showing negligent omission by election officials or otherwise explaining the presence or origin of uninitialled absentee ballots. (*Sibley* v. *Staiger,* 347 Ill. 288; *Barlick* v. *Kunz,* 375 Ill. 318; *Lacy* v. *Rhodes,* 369 Ill. 167.) When

in 1943, the election laws were re-enacted, and article 20 was added as an additional method of voting, no changes in the provisions here pertinent were made. It is elementary that when the legislature by an amendatory act retains in a new statute the same words and phraseology that had been contained in a former statute, it must be presumed that it used such words and phraseology in the sense that had already been placed upon them by judicial construction. (*Spiehs* v. *Insull,* 278 Ill. 184, 187.) This is particularly true inasmuch as the provisions of the Election Code of 1943, so far as they are the same as those of any prior statute, are to be construed as a continuation of such prior provisions, and not as a new enactment, (Ill. Rev. Stat. 1959, chap 46, par. 1—2). It must be assumed, therefore, that the legislature in re-enacting this same wording in both section 17—16 and section 19—9, did so in view of the judicial construction which had been given it by this court. (*E.g., Spiehs* v. *Insull,* 278 Ill. 184, 187.) Because of the identical language in section 10—9, as to endorsement, there seems little justification to construe it differently than section 19—9.

It is doubtless true that election statutes are to be tested with a leaning to liberality in view of the great public purposes which they accomplish and that provisions designed merely for information and guidance of officers should be regarded as directory only, particularly after the election has occurred. *People ex rel. Agnew* v. *Graham,* 267 Ill. 426; *People ex rel. Comerford* v. *Miller,* 314 Ill. 474, 478.

Appellant argues that where as here the omission of election officials occurs after the absentee voter divests himself of control over his ballot, as opposed to the regularly cast ballot which the voter can see is initialled before he gives up control over it, there is a basic and fundamental difference which the legislature could not have intended to treat in the same manner; that the policy of directory construction should be applied to avoid disfranchisement of the totally

innocent absentee voter. Such policy, however, has always been subject to exceptions where the statute specifically provides that a thing shall be done in the manner indicated, or where the irregularity has rendered doubtful the evidence from which the result is to be declared, (*People ex rel. Comerford* v. *Miller,* 314 Ill. 474, 478), or would tend strongly to overthrow the safe conduct of elections. *People ex rel. Agnew* v. *Graham,* 267 Ill. 426, 441, 442.

Substantially, the offer of proof in the case at bar indicated it could be shown through the testimony of the county clerk that before issuing any ballot to absentee voters he folded the ballots in a very exact manner: they were folded by turning the bottom edge of the ballot upward to the top of the ballot and creasing it, then with the folded edge toward the person folding it, the ballot was folded from the right edge over to the left edge and then folded again from the right to the left, thereby folding the ballot into eight segments. That the county clerk would testify that nearly all of the uninitialled ballots were folded into eight segments in the manner above described. Proof was further offered that all ballots issued to absentee voters were folded in such manner because of the inability to fold the ballots into larger segments and get them into the type of envelope provided for their return. It could also be shown that some of the uninitialled eight-segment ballots would bear the impressions of a notary's seal as would have occurred had the certificate on the envelope bearing the voted absentee ballot been executed after the ballot was enclosed therein. Appellant also offered to show that if the uninitialled ballots were inspected, the number of uninitialled ballots folded into eight segments would tally precinct by precinct, with the number of absent voters' ballots delivered by the county clerk; that in nearly all instances the ballots which bore initials were folded into only six segments, these being the ballots cast by voters balloting at the polls. Proof was also offered which would, through the testimony of

various precinct judges of election, show that they opened the distinctive envelopes containing absentee ballots folded into eight segments, and dropped these into ballot boxes unaware of the initialling requirement.

The facts in the present case clearly show the necessity for some standard to safeguard the ballot and to insure uniformity as to which ballots are to be counted. (*Cf., Scribner* v. *Sachs,* 18 Ill.2d 400.) It is conceded by appellant that some of the uninitialled ballots were not cast by absentee electors and that therefore they must have crept into the ballot box as a result of balloting at the polls. It is precisely this type of occurrence that the initialling provisions are designed to prevent. Their purpose is to permit ready identification of legal ballots cast (*Laird* v. *Williams,* 281 Ill. 233, 238, 239) ; to prevent any ballot from being received or counted which is not identified, the thing sought being the certain identification of the ballot, (*Blattner* v. *Dietz,* 311 Ill. 445, 448) ; to prevent the voting and counting of ballots that may have been surreptitiously obtained and copied (*Kelly* v. *Adams,* 183 Ill. 193) ; to safeguard the votes of electors (*Sibley* v. *Staiger,* 347 Ill. 288) ; to prevent frauds from being committed in elections, and to afford efficient means for detecting frauds. (*Griffin* v. *Rausa,* 2 Ill.2d 421). The precautionary nature of initialling is such that we have held it cannot be supplied or corrected after the ballots have once been deposited in the ballot box. *Talbott* v. *Thompson,* 350 Ill. 86, 96.

To attempt to distinguish absentee ballots on the basis of the manner in which they are folded, or otherwise treated, as compared to regularly cast ballots, jeopardizes any criterion or standard whereby properly voted ballots are with certainty to be determined and not diluted by improperly or illegally cast ballots. To attempt to identify a validly cast ballot from an illegal one upon such fortuitous circumstance would be a dangerous rule to permit to creep into the conduct of our elections. (*Cf., Griffin* v. *Rausa,* 2 Ill.2d 421.) It

would be a dangerous rule to establish that election judges may disregard the plain provisions of the statutes and thereby defeat the intention of the law to prevent actual fraud from being committed and to disarm the constituted authority of the efficient means provided by statute for detecting such fraud. *Cf., Laird* v. *Williams,* 281 Ill. 233, 239; *Harvey* v. *Sullivan,* 406 Ill. 472, 475, 477.

Although there have been instances where this court has recognized interpretative errors in statutory construction, such occasions are hardly analogous or applicable to the present statutory provisions which are undeniably plain, and to an interpretation which, apart from having received legislative acquiescence for so many years, serves its manifestly safeguarding purposes under the facts here presented. Notwithstanding our mandatory application of the initialling provisions to absentee ballots and the excluding of proof evidencing official omission or mistake, the legislature, which is entirely familiar with our decisions, has never seen fit to relax the election laws on these issues. This in itself seems a manifestation of intent. It further seems evident that to deviate from our construction at this late date would be to usurp the prerogative of the legislative branch, specifically given to it by the constitution. (*Lehman* v. *Hill,* 414 Ill. 173; *Scribner* v. *Sachs,* 18 Ill.2d 400.) The authority for such change in our mandatory interpretation must come from the legislature, whose duty it is to determine whether a voter or voters shall be disfranchised by the failure of the duly appointed officials to perform the plain mandate of the statute. *Cf., Lehman* v. *Hill,* 414 Ill. 173; see also *Donlan* v. *Cooke,* 212 Ia. 771, 237 N.W. 496.

For the above reasons the decision of the county court of La Salle County is affirmed.

*Judgment affirmed.*