(No. 40835.—

C. R. (DICK) CRAIG, Appellee, *vs.* LAWRENCE PETERSON
*et al.,* Appellants.

*Opinion filed January 19, 1968.*

REIDY, KATZ, MCANDREWS, DURKEE & TELLEEN, of
Rock Island, (ISADOR I. KATZ, STUART R. LEFSTEIN, and
JOHN M. TELLEEN, of counsel,) for appellants.

STEWART R. WINSTEIN, of Rock Island, for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Presented for review is the election contest judgment of the Rock Island County circuit court declaring plaintiff Craig the duly elected county treasurer of that county. The facts are stipulated.

Plaintiff was opposed by defendant Peterson in the November, 1966, general election, and the original canvass resulted in certification of defendant as the successful candidate with 24,002 votes as against plaintiff's 23,924, a difference of 68 votes. Voting machines were used at the polling places for all contested public offices, and the only paper ballots used for contested offices were those used by absentee voters, although paper ballots were used by all electors for the purpose of voting on constitutional amendments and those judges seeking retention in office. Separate ballot boxes were provided for the judicial retention and constitutional amendment ballots. No ballot box was provided for the public office ballots of absentee voters, and these ballots were simply removed from their envelopes after the polls closed and counted by the election judges without having been deposited in any box.

None of the absentee ballots cast in 14 precincts contained the initials of any election judge as required by statute. If these unindorsed ballots are counted, as they were in the original tally, defendant Peterson is the winner; if they must be excluded, as the trial court held, its order declaring plaintiff the victor must be affirmed. It is stipulated that the "counted absentee ballots were in fact the same absentee ballots delivered by the County Clerk's office." No claim of fraud or other irregularity is made excepting the failure of the election judges to initial the absentee ballots, and the sole issue is the correctness of the

trial court ruling that such uninitialled ballots could not be counted.

Ten voters who had each cast absentee ballots in one of the 14 precincts where such ballots were uninitialled intervened in this action individually and on behalf of all others similarly situated asking that their ballots be counted, and both they and defendant Peterson have appealed. They contend (1) that application of the initialling requirement of the statute, and its attendant disenfranchisement of absentee voters in this voting machine election, is a violation of both the fourteenth amendment to the United States constitution and section 18 of article II and section 1 of article VII of the Illinois constitution. (Ill. Const., art. II, sec. 18, art. VII, sec. 1); (2) that the election laws of this state do not require initialling of absentee ballots in a voting machine election as conducted in this case; (3) that if such an initialling requirement does exist as to absentee ballots in a machine election, it is directory only and not mandatory.

Section 17—9 of the Election Code provides in part: "One of the judges shall give the voter one, and only one, of each ballot to be voted at the election, on the back of which ballots such judge shall indorse his initials in such manner that they may be seen when each such ballot is properly folded, and the voter's name shall be immediately checked on the register list." (Ill. Rev. Stat. 1965, chap. 46, par. 17—9.) Section 17—16 provides in part: "No ballot without the official endorsement shall be deposited in the ballot box, and none but ballots provided in accordance with the provisions of this Act shall be counted."

Section 19—9 of the Act provides in part: "At the close of the regular balloting and at the close of the polls the judges of election of each voting precinct shall proceed to cast the absent voter's ballot separately, and as each absent voter's ballot is taken shall open the outer or carrier envelope, announce the absent voter's name, and compare the signature upon the application with the signature upon

the affidavit on the ballot envelope. In case the judges find the affidavits properly executed, that the signatures correspond, that the applicant is a duly qualified elector in the precinct and the applicant has not been present and voted within the county where he represents himself to be a qualified elector on such election day, they shall open the envelope containing the absent voter's ballot in such manner as not to deface or destroy the affidavit thereon, or mark or tear the ballots therein and take out the ballot or ballots therein contained without unfolding or permitting the same to be unfolded or examined, and having endorsed the ballot in like manner as other ballots are required to be endorsed, shall deposit the same in the proper ballot box or boxes and enter the absent voter's name in the poll book the same as if he had been present and voted in person."

While this court has had no occasion to consider the constitutionality or the effect of these provisions in an election in which both voting machines and paper ballots have been used, questions relating to the validity of uninitialled ballots in an all-paper ballot election have frequently been presented and it is now well established, despite earlier decisions to the contrary, that the statutory requirement that election judges initial the ballot before it is placed in the ballot box is a mandatory provision, and that no ballot without such initials may be counted, regardless of whether it be an absentee ballot or otherwise. (*Morandi* v. *Heiman,* 23 Ill.2d 365, and cases there cited; *Griffin* v. *Rausa,* 2 Ill.2d 421; *Tuthill* v. *Rendelman,* 387 Ill. 321, (overruling three earlier cases).) We have not, however, considered the question in the context here presented, and we agree with the intervening appellants that their disenfranchisement, without their fault, by application of the initialling requirement to their paper ballots in an otherwise machine election poses substantial constitutional problems under section 18 of article II of our constitution which provides: "All elections shall be free and equal", and section 1 of article VII, pro-

viding that all persons possessing the qualifications therein specified "shall be entitled to vote at such election," as well as under the fourteenth amendment to the United States constitution. These sections of our State constitution have been construed by this court on numerous occasions. In *People* v. *Deatherage,* 401 Ill. 25, 37, we said: "The constitutional guarantee gives to every qualified voter the free exercise of his right to cast his vote without suffering any restraint; and his vote, when cast, shall have the same influence as the vote of any other voter", and in *Moran* v. *Bowley,* 347 Ill. 148, 162-3, we stated: "Elections are equal when the vote of each voter is equal in its influence upon the result to the vote of every other elector—where each ballot is as effective as every other ballot." (See, also, *Mc-Alpine* v. *Dimick,* 326 Ill. 240, 248; *People ex rel. Lindstrand* v. *Emmerson,* 333 Ill. 606, 611; *People* v. *Fox,* 294 Ill. 263, 268; *People ex rel. Grinnell* v. *Hoffman,* 116 Ill. 587, 599.) Likewise, the Federal courts have evinced similar concern. While there concerned with apportionment problems, the statements of the United States Supreme Court in *Reynolds* v. *Sims,* 377 U.S. 533, 554-5, 12 L. Ed. 2d 506, 523, 84 S. Ct. 1362, 1377-8, are *apropos:* "Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections. * * * It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, [citation] and to have their votes counted, [citation]. In Mosley the Court stated that it is 'as equally unquestionable that the right to have one's vote counted is as open to protection * * * as the right to put a ballot in a box.' * * * The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government."

While the necessity of, and legislative authority to establish, reasonable rules assuring the honest and orderly con-

duct of elections is obvious, it is apparent from the above cases that statutory requirements which, absent fault on his part, deprive a fully qualified voter of his right to vote or to have his vote counted are constitutionally suspect, particularly where such requirements do not substantially promote the secrecy and integrity of the election. It is further apparent that in construing statutory provisions regulating elections the courts generally have tended to hold directory those requirements as to which the legislature has not clearly indicated a contrary intention, particularly where such requirements do not contribute substantially to the integrity of the election process. *People ex rel. Bell* v. *Powell,* 35 Ill.2d 381, 383; *People ex rel. Harris* v. *Powell,* 35 Ill.2d 384, 386-7; *People ex rel. Meyer* v. *Kerner,* 35 Ill.2d 33, 39; *Siedschlag* v. *May,* 363 Ill. 538; *State ex rel. Read* v. *Christ,* 25 N.M. 175, 179 P. 629; *Tuthill* v. *Rendelman,* 387 Ill. 321, 351.

And even in those instances wherein the legislature has declared its intention in seemingly mandatory terms, courts have not hesitated to inquire into the reasonableness of such provisions, and, if such regulatory provisions operated unequally upon equally qualified voters (*People ex rel. Phillips* v. *Strassheim,* 240 Ill. 279, 289) or made no substantial contribution towards insuring the honesty and secrecy of the election, but, rather, were of an arbitrary nature and disenfranchised qualified voters without their fault (*Strassheim,* 240 Ill. 279, 289; *Moyer* v. *Van de Vanter,* 12 Wash. 377, 41 Pac. 60; *State* v. *Barnett,* 182 Wis. 114, 195 N.W. 707; *Ollmann* v. *Kowalewski,* 238 Wis. 574, 300 N.W. 183, portions of which are quoted in *In re Chairman in Town of Worcester* v. *Boho,* 29 Wis.2d 674, 139 N.W.2d 557, 562-3), have held such provisions unconstitutional.

It is noteworthy that in the numerous cases in this court involving uninitialled ballots, the constitutionality of that requirement seems not to have been challenged nor discussed other than inferentially. The absence of such challenge is

likely accounted for by the fact that such requirement, as applied to an all-paper ballot election, is a patently reasonable one in that it serves a salutary purpose by enabling the election judges to identify those ballots which they have personally initialled and therefore constitutes an effective safeguard against corrupt practices such as "stuffing" a ballot box. (See discussion in majority and dissenting opinions, *Laird* v. *Williams,* 281 Ill. 233, 238-9, 243-4.) Likewise the same considerations have been held to apply to absentee ballots in an all-paper ballot election, for there is no other equally effective method of identifying and separating the legally cast from the illegally cast votes. (*Morandi* v. *Heiman,* 23 Ill.2d 365, 371; *Griffin* v. *Rausa,* 2 Ill.2d 421, 430-1.) But it is not at all clear as to the manner in which the sanctity and integrity of an election is promoted by applying the rule to exclude uninitialled absentee ballots cast by qualified voters in an election in which the only paper ballots used on the issues or offices in question are those voted by the absentees, and this is particularly true where, as here, no question of fraud or tampering is presented, and it is stipulated that the ballots in question are in fact the same ballots delivered by the county clerk's office. Under these circumstances we believe these uninitialled absentee ballots could properly be counted, and that the statutory commands construed in *Tuthill, Griffin* and *Morandi* to be mandatory in an all-paper ballot election must be held only directory when applied in the context of the case before us.

Plaintiff urges that our earlier decisions require exclusion of the uninitialled absentee ballots and places substantial reliance upon our opinion in the *Morandi* case. A close reading of *Morandi* will disclose, however, no incompatibility with the conclusion which we reach here. There the election was an all-paper ballot one and a substantial number of absentee ballots were cast. Apparently as a result of a misunderstanding of the election laws, the absentee

ballots were not initialled by the judges of election. While the majority of the uninitialled ballots were those of absentee voters, it was undisputed that there were also uninitialled ballots cast by some who voted at the polls in person. It was there argued that where the omission of election officials occurs after the absentee voter divests himself of control over his ballot, as opposed to the regularly cast ballot which the voter can make sure is initialled before he gives up control over it, a fundamental difference exists and that it could not have been the legislative intention to treat both situations alike; that, consequently, a policy of directory construction should be applied to avoid disenfranchisement of the totally innocent absentee voter. However, under the circumstances in that case there was no satisfactory method of separating the absentee ballots from the illegally cast regular ballots and, while it was argued that such absentee ballots had been folded differently from those cast in the usual fashion, the court there stated that attempting to distinguish "a validly cast ballot from an illegal one upon such fortuitous circumstance would be a dangerous rule." *Morandi*, p. 374.

No useful purpose would be served by a detailed consideration of the other cases in which the initialling requirement has been held mandatory and uninitialled ballots rejected. Each involved an all-paper ballot election, and the basic considerations have been the same. The statute requires the ballots to be initialled, it commands that no unindorsed ballot shall be counted, this requirement substantially contributes to the integrity of the election process and is a valid, mandatory provision which the courts must enforce. But this reasoning simply does not apply with equal force to the situation before us where the initialling requirement, in the circumstances of this case, contributes not at all to the integrity of the election process: it does not assist in identifying the ballots for no identification problem exists, nor can a problem exist where the only paper ballots

cast for these offices were the absentee ballots; it does not assist in separating the illegally cast from the legally cast ballots for there were no other paper ballots for public offices and there is no claim that these absentee ballots were altered, tampered with or in any way improperly preserved —in fact it is stipulated that these are the identical ballots received by the absentee voters from the county clerk. The net result of a mandatory application of the initialling requirement to the absentee ballots in the circumstances of this case would be to disenfranchise a substantial number of qualified voters who have done everything in their power to comply with the law, a result which neither our State nor Federal constitutions will tolerate where, as here, the rule causing their disenfranchisement made no substantial contribution to the integrity of this election. (*Reynolds; Moyer; Ollmann.*) In fact, the initialling requirement as to absentee ballots, if held valid and mandatory in this case, might well serve as the means of achieving the very result it was intended to prevent, for corrupt election judges could deliberately refrain from initialling ballots of those absentee voters whom they had reason to believe voted otherwise than the judges desired. This possibility, of course, always exists as to absentee ballots; the difference between the ordinary situation and this is that in an all-paper ballot election there is no other means of identifying the legally cast ballots. The necessity, in order to guarantee the integrity of the election, of some such method of separating the legally cast ballots from those illegally cast suffices to make its application in the usual case constitutionally permissible even though it results in disenfranchisement of those absentee voters whose ballots are uninitialled. No such necessity or justification exists in the case before us.

The trial judge, in an especially well-considered memorandum opinion, emphasized two factors which he believed required him to exclude the uninitialled ballots, and these are the basis for much of plaintiff's argument here. The

first is that "a rational basis exists for requiring initialling in a machine election where there are also voted paper ballots," and that since paper ballots (constitutional amendment and judicial retention) were used in this election, a corrupt voter at the polls might slip into one of these two ballots a paper ballot for contested offices. Assuming for the moment that such voter might secure a contested offices ballot in some unauthorized fashion, (there apparently were no such ballots at the polling places) vote for such officers on the voting machine, then vote the paper ballot and fold into his judicial retention or constitutional amendment ballot the much larger contested offices ballot and place them in one of the special ballot boxes, is of no assistance to plaintiff for such action would pose no threat to the integrity of this election. Such a ballot would obviously be illegal for it would be uninitialled and the only one of its kind in the ballot box (there was no ballot box provided for absentee ballots and they were not placed in either of the special boxes). Consequently, no commingling occurred, and the question as to which of the ballots were legally cast cannot arise.

The second basis for his decision emphasized by the trial judge is the firmness of the position taken by this court in applying the indorsement requirement to both regular and absentee ballots and permitting no exception even where there was no question of fraud and despite resulting disenfranchisement of qualified voters by the mistakes of election officials which the absentee voter had no opportunity to correct. But two vital factors are here overlooked. Each of those cases involved a paper ballot election and in such elections where identical ballots are used by all voters, there must, as pointed out earlier herein, in order to prevent fraud, be some method whereby illegally cast ballots may be distinguished and rejected. The initialling provision is the principal method chosen by the legislature for accomplishing this purpose since the judge who has indorsed his

initials upon the ballot can thereafter identify that ballot as legally cast. Because of the compelling importance to the public that elections be honestly conducted, and the substantial contribution of the initialling procedure to that result, no constitutional problem arises and courts are free to enforce the statutory command even though absentee voters may be disenfranchised without fault on their part (one who votes at the polls has the opportunity to see whether the judge of election has initialled his ballot and request it to be done if it has not). The second factor overlooked is that application of the same endorsement requirement in a situation such as that before us where it contributes nothing to the integrity of the election process, but serves only to disenfranchise innocent and completely qualified voters who are powerless to prevent such result, constitutes an impermissible impairment of such voter's constitutionally guaranteed right to vote and have his vote counted. The trial court and plaintiff attempt to distinguish this case from *Reynolds* v. *Sims* on the basis that the disenfranchisement there resulted from compliance with a statute (legislative apportionment) whereas here that result flows from noncompliance with statutory commands (initialling). Whether the disenfranchisement here stems from noncompliance with the initialling requirement, or from compliance with the statutory provision that no unindorsed ballot can be counted, may be debatable, but, in our view the source is immaterial for the result is identical under either theory: an unconstitutional impairment of the voting franchise.

It is our duty to so interpret a statute as to promote its essential purposes and to avoid, if possible, a construction that would raise doubts as to its validity. (*People* v. *Nastasio,* 19 Ill.2d 524, 529; *People* v. *Deatherage,* 401 Ill. 25, 38.) We therefore hold the statutory requirements relating to the initialling of ballots by election judges are directory, rather than mandatory, when considered in relation to an election where the only paper ballots used on the issue or

office in question are those of absentee voters, and the only irregularity complained of is the absence of such endorsement.

The judgment of the circuit court of Rock Island County is accordingly reversed, and the cause remanded with directions to enter judgment declaring defendant the duly elected treasurer of Rock Island County.

*Reversed and remanded, with directions.*